

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-16-00209-CR**

DONALD RAY WELLS                                                        APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

## FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1407640D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Donald Ray Wells appeals from his conviction for aggravated sexual assault of a child under fourteen and his eight-year sentence. In five issues, he argues that the trial court erred by (1) allowing a doctor to testify regarding the child complainant's sexual-assault examination instead of the nurse examiner who conducted the exam, (2) allowing Appellant's daughter to

---

[1]*See* Tex. R. App. P. 47.4.

testify to Appellant's past similar behavior with her and to a hearsay statement by her boyfriend, and (3) denying Appellant's motion for a mistrial after Appellant's daughter referred to Appellant's supposed drug use during her testimony. Because we conclude that the trial court either did not err or did not clearly abuse its discretion, we affirm the trial court's judgment.

## I.  BACKGROUND

### A.  THE OFFENSE AND SUBSEQUENT OUTCRY

After Carrie's father Paul was imprisoned when she was four, she began living with her paternal aunt, Wanda.[2]  Wanda began dating Appellant in August 2010 when Carrie was nine.  Wanda and Carrie would go to Appellant's house and frequently, both would spend the night there.  On November 25, 2010, which was Thanksgiving, Carrie and Appellant cooked dinner at his house while Wanda watched television in the other room.  Carrie eventually went to play on a computer in another room of the house.  Appellant came into the room, sat on a stool behind Carrie, put his hands under her underwear, and put his fingers in her vagina.  Carrie told no one.

Wanda and Appellant's relationship continued, and Wanda began spending most nights at his house with Carrie.  In January 2012, Carrie asked Wanda if she could sleep at her grandmother's house instead of going to

---

[2]We use aliases to refer to the complainant, her relatives, and Appellant's relatives.  *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3); 2d Tex. App. (Fort Worth) Loc. R. 7.

2

Appellant's house with Wanda. Wanda repeatedly pressed Carrie to explain why she did not want to go to Appellant's. Carrie told Wanda what Appellant had done to her in November 2010. Wanda and Carrie cried, Carrie got the impression Wanda believed her, and Wanda allowed Carrie to stay with her grandmother that night. Although Wanda confronted Appellant with Carrie's outcry that night, he denied the incident occurred, and Wanda told Carrie the next day that she believed him. Wanda did tell Carrie, however, that she would look into reporting her allegations but later told Carrie that the statute of limitations had run. Wanda and Appellant continued to date.

In September 2013 when Carrie was in seventh grade, Carrie's father was released from prison and began living with Carrie and Wanda. Wanda warned Carrie not to tell her father about her allegations against Wells. But Carrie told a school counselor that she had been raped without giving any details, which the counselor reported to Paul. When Paul asked Carrie about it, she denied that anything had ever happened, explaining later that she denied it because she was embarrassed.

Shortly thereafter, Carrie told Paul's fiancée Angela that Appellant had put his hand inside her underwear and put his finger in her vagina on Thanksgiving 2010. Angela later told a prosecutor that Carrie had said the assault occurred in the kitchen while Carrie was standing at the stove. At Angela's urging, Paul talked to Carrie, who told Paul about the sexual assault. Paul did not report the

3

incident, but Carrie began seeing a counselor for depression and behavioral problems, including mood swings and cutting.

When Carrie was in eighth grade at a different school, her class was shown a video about sexual assault in October 2014. Carrie asked to leave the room and later told two of her friends that she had been sexually assaulted. Carrie's friends told an "intervention specialist" at the school, Melissa Medina, that Carrie had been raped four years before. Medina talked to Carrie and although Medina could not clearly recall what Carrie told her, Carrie remembered telling Medina that Appellant got behind her, put his arms around her, put his hands down her pants, and penetrated her—that she had been sexually assaulted. Medina told a school resource officer who filed a police report. Medina also notified Paul and the Department of Family and Protective Services.

The responding police detective, Victor Hadash, referred Carrie for a forensic interview, which occurred December 4, 2014. Carrie told the interviewer that she had reported the incident to Angela and Wanda, naming Appellant and providing an "impressive" amount of sensory and peripheral details. The interviewer did not see any signs that Carrie had been coached. Hadash referred Carrie to the child advocacy resources and evaluation (CARE) team at Cook Children's Hospital. On January 9, 2015, a CARE team nurse examiner, Araceli Desmarais, performed a sexual-assault examination on Carrie. Carrie told Desmarais as part of her factual narrative that when she was nine and sitting at a computer, Appellant "was sitting on a chair behind her, and he reached down

4

and stuck his hand in her pants, and then her words were 'fingered her,' meaning putting his finger in her female genital organ, and then after that, he went and washed [his] hands, and they had dinner." Carrie told Desmarais that although she told Wanda about the incident two years later, Appellant claimed not to remember anything because he had been drunk. Carrie's physical exam showed no evidence of trauma but because of Carrie's past suicidal thoughts and history of cutting, Desmarais referred her to outpatient therapy.

## B. PRETRIAL AND TRIAL

A grand jury indicted Appellant for aggravated sexual assault of a child younger than fourteen by inserting his finger into Carrie's sexual organ and for indecency with a child younger than seventeen. *See* Tex. Penal Code Ann. §§ 21.11(a), 22.021(a) (West Supp. 2017). Before trial, the State notified Appellant that Desmarais, whom the State had designated as a "possible" expert witness for Appellant's trial, had been hired as a defense expert in an unrelated sexual-assault prosecution and had made a statement in her report that the State believed to be supported by "no scientific or medical authority." *See* Tex. Code Crim. Proc. Ann. art. 39.14(a), (h) (West Supp. 2017). Specifically, Desmarais had concluded her expert report in that case by stating that "none" of the abnormal physical findings revealed by the exam "are consistent with sexual assault findings. They are ALL generalized findings that are caused from many different types of irritation." Desmarais later informed the State that her report could have been "better worded" and "simplified" to state that "[t]he findings were

5

non-specific to sexual assault. They are all generalized findings that can be caused from many different types of irritation including infection as well as trauma from sexual assault." The State then amended its witness list for Appellant's trial to add Dr. Jayme Coffman, the medical director of the CARE team, as a possible expert witness.

At trial, Coffman referred to Desmarais's report and testified to the outcry statements Carrie made to Desmarais that Desmarais then included in her report—Carrie's "free narrative" of the assault. Appellant objected to Coffman's testimony as inadmissible hearsay and as violative of his confrontation rights, both of which the trial court overruled. The State did not call Desmarais as a witness, and Desmarais's report was not introduced into evidence.[3]

Appellant's daughter Kylie testified at trial and recounted that in 2007 when she was fourteen, Appellant touched her sexual organ with his hand and put his tongue on her sexual organ. Appellant was indicted for these offenses, but the indictment was dismissed after Kylie did not appear for trial. Kylie also mentioned that she was "sure Appellant did drugs," which the trial court instructed the jury to disregard at Appellant's request after sustaining his

---

[3]Appellant asserts that the State did not call Desmarais as a witness because "she had problems with credibility." But the portion of the record Appellant cites for this statement is merely Appellant's counsel's argument to the trial court urging the exclusion of Coffman's testimony: "[A]pparently their nurse has done something inappropriate." Other than the State's notice under article 39.14, the record does not unmistakably reveal why the State did not call Desmarais as a witness.

6

objection to the testimony. The trial court denied Appellant's motion for mistrial. Kylie additionally stated that her boyfriend did not want her to have friends or have any contact with her family, which Appellant fruitlessly objected to as inadmissible hearsay.

The jury found Appellant guilty of aggravated sexual assault of a child and after a punishment hearing, assessed his punishment at eight years' confinement with no fine for the first-degree felony. *See* Tex. Penal Code Ann. § 12.32(a) (West 2011), § 22.021(e). On appeal, Appellant challenges Coffman's testimony recounting Carrie's narrative to Desmarais, Kylie's extraneous-offense testimony, and Kylie's testimony that her boyfriend was controlling.

## II. COFFMAN'S TESTIMONY

In his first two issues, Appellant argues that the trial court abused its discretion by allowing Coffman to testify to what Carrie told Desmarais during the sexual-assault examination. In his first issue, he argues that allowing Coffman to testify violated his confrontation rights based on his assertion that Desmarais's findings were testimonial. In his second issue, he contends that Carrie's statements to Desmarais, which Coffman recounted, were inadmissible hearsay. We review de novo the trial court's decision to admit Coffman's testimony over Appellant's objection based on the Confrontation Clause. *See Lilly v. Virginia*, 527 U.S. 116, 136–37 (1999) (plurality op.); *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006). But we review the trial court's ruling on Appellant's hearsay objection for an abuse of discretion. *See Wall*, 184 S.W.3d at 743.

7

## A. CONFRONTATION CLAUSE

The Confrontation Clause dictates that an accused "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. But if the declarant is subject to cross-examination at trial, "the Confrontation Clause places no constraints at all on the use of [a declarant's] prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004). Accordingly, to implicate the Confrontation Clause, the challenged out-of-court statement must be made by a witness absent from trial and be testimonial in nature. *See id.* at 59.

The State and Appellant focus on whether Carrie's narrative statements to Desmarais in the sexual-assault report were testimonial and subject to the Confrontation Clause.[4] The portion of Desmarais's report that Coffman testified to and that Appellant argued violated his rights to confrontation was the portion where Desmarais wrote down what Carrie told her happened on Thanksgiving 2010. In this portion of the report, Desmarais was in essence a scribe, not a

---

[4]Appellant casts his argument in terms of whether Desmarais's "findings" were testimonial. But Appellant does not challenge the admission of Coffman's testimony recounting Desmarais's medical findings. Indeed, these findings were favorable to Appellant because Desmarais found no evidence of trauma. Appellant only takes issue with the admission of Carrie's narrative statements to Desmarais.

declarant making an assertion of fact.[5]  *See generally* Tex. R. Evid. 801(a)–(b) (defining "statement" and "declarant" for purposes of the hearsay rule).  Carrie was the declarant of the challenged statements, and she had been subject to cross-examination at trial about the details of her outcries to Wanda, Paul, Angela, Medina, and the school counselor.  *See Oliva v. State*, No. 13-15-00609-CR, 2017 WL 2608280, at *7 (Tex. App.—Corpus Christi June 15, 2017, no pet.) (mem. op., not designated for publication) (holding testimony by nurse examiner's supervisor about patient's "verbatim" medical history reflected in nurse's sexual-assault report did not violate Confrontation Clause because patient was declarant and because patient was subject to cross-examination).  Accordingly, the trial court did not err by overruling Appellant's objection based on the Confrontation Clause.  We overrule issue one.

### B.  HEARSAY

Even though the admission of Coffman's testimony recounting Carrie's statements to Desmarais did not violate the Confrontation Clause, the evidence could nevertheless be subject to exclusion under the hearsay rule.  *Cf.* Tex. R. Evid. 101(d) (providing even if evidence is admissible under evidentiary rules, it nevertheless must be excluded if exclusion required by constitutional provision); *Infante v. State*, 404 S.W.3d 656, 662 (Tex. App.—Houston [1st Dist.] 2012, no

---

[5]Coffman testified that when a nurse examiner asks a child victim "[w]hat happened," the nurse examiner merely writes down what the child says as the child is saying it.

9

pet.) (recognizing Confrontation Clause and hearsay rule are separate inquiries). Appellant argues that Coffman's testimony was inadmissible hearsay because "Coffman was allowed to testify about something [Carrie] told to [Desmarais] when [Coffman] was not a party to that conversation." The State counters as it did in the trial court that Coffman's challenged testimony was admissible under an exception to the hearsay rule: a statement made for the purposes of medical diagnosis and treatment. *See* Tex. R. Evid. 803(4). And as he did at trial, Appellant responds that rule 803(4) does not apply because Carrie was sent for a sexual-assault exam "for evidentiary purposes and so that the results can be used in court," not because Carrie "needed immediate medical treatment."[6]

Coffman testified that sexual-assault exams, including the exam performed by Desmarais on Carrie, are performed for the purposes of medical diagnosis and treatment by the CARE team even in cases involving delayed outcries:

> The [sexual-assault] exam is done - - my protocol for our [CARE] program is if there's skin-to-skin contact with the genitals, then we do the exam to see if there's any healed trauma and to look for just general genital health because oftentimes these children don't go for medical care and have that part of their anatomy looked at.
>
> We also want to obtain the history to know their emotional well-being as well as their physical well-being, and so we gather the information so we can do an appropriate evaluation, diagnosis, and treatment.

---

[6]Appellant also asserts that because Desmarais was the declarant, her statements in the report were not for the purposes of medical diagnosis because Desmarais was not receiving medical treatment. As we discussed, Carrie was the declarant of the factual narrative.

10

Indeed, Carrie's exam revealed that she previously had suicidal thoughts and had a history of cutting, causing Desmarais to refer Carrie for outpatient therapy. Coffman also testified that a child would know that the reason the exam was being performed was for medical purposes.

We conclude that Carrie's factual narrative included in the sexual-assault exam met the requirements of rule 803(4) and, thus, was made for the purpose of medical diagnosis and treatment. *See, e.g.*, *Estes v. State*, 487 S.W.3d 737, 756–57 (Tex. App.—Fort Worth 2016, pet. granted). Generally, the object of a sexual-assault exam is to determine whether the child complainant has been sexually abused and whether further medical attention is needed. *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd). The evidence in this case shows that Carrie's factual statements describing Appellant's acts of sexual abuse were part of her medical diagnosis and treatment. *Id.*; *see also Bargas v. State*, 252 S.W.3d 876, 896 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Matz v. State*, 21 S.W.3d 911, 912 n.1 (Tex. App.—Fort Worth 2000, pet. ref'd). The fact that Hadash, a police detective, referred Carrie for the exam does not, standing alone, compel a conclusion that the resulting exam was not done for medical diagnosis and treatment. Accordingly, rule 803(4) applied to justify admission of Coffman's testimony about Carrie's factual narrative in the report, and the trial court did not abuse its discretion by overruling Appellant's

11

hearsay objection.[7]  *See, e.g., Ramires v. State*, No. 02-16-00185-CR, 2017 WL 4542857, at \*6–7 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op., not designated for publication); *Franklin v. State*, 459 S.W.3d 670, 675–77 (Tex. App.—Texarkana 2015, pet. ref'd).

## III.  KYLIE'S TESTIMONY

In issues three and five, Appellant challenges the admission of Kylie's testimony that Appellant had previously sexually assaulted her and that her boyfriend would not let her have friends or see her family.  We review the trial court's decision to admit this testimony for a clear abuse of discretion.  *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999).  In his fourth issue, Appellant argues the trial court's refusal to declare a mistrial based on Kylie's comment that Appellant used drugs was error.  We also review the denial of a mistrial after a curative instruction was given for a clear abuse of discretion.  *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Jackson v. State*, 287 S.W.3d 346, 353 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

---

[7]Even if admission of this evidence were an abuse of discretion, we would conclude that Appellant's substantial rights were not affected because this same evidence was admitted through Carrie's testimony.  *See* Tex. R. App. P. 44.2(b); *Estes*, 487 S.W.3d at 757.

12

## A. EXTRANEOUS OFFENSES

### 1. Past Sexual Assaults

At trial, Kylie testified that Appellant sexually assaulted her twice in 2007 when she was fourteen. Appellant objected that this evidence was unfairly prejudicial and would mislead the jury, rendering it excludable. *See* Tex. R. Evid. 403. The trial court overruled the objection and stated that the evidence was admissible because it related to Appellant's "character . . . and acts in conformity with that character."

Although extraneous offenses generally are inadmissible to prove character conformity under rule 404(b), such evidence is statutorily admissible in prosecutions for aggravated sexual assault of a child to show character conformity notwithstanding rule 404(b). *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West Supp. 2017); Tex. R. Evid. 404(b)(1). But even if extraneous-offense evidence is relevant and admissible under article 38.37, it is subject to exclusion if its probative value is substantially outweighed and if rule 403 is raised in the trial court. *See Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd). Recognizing that the trial court was in a superior position to gauge the impact of the evidence, we measure the trial court's ruling against the rule 403 balancing criteria: (1) the inherent probative force of the evidence along with (2) the State's need for the evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the

evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App 2006); *Mozon*, 991 S.W.2d at 847. At the outset, however, we recognize that rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will generally be more probative than prejudicial. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). It is Appellant's burden to overcome this presumption and demonstrate that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or of misleading the jury. *Sanders*, 255 S.W.3d at 760.

We conclude that Appellant failed to overcome this presumption. Carrie's credibility was integral to the State's case. Because of Carrie's delayed and retracted outcries, there was no physical evidence linking Appellant to the charged offense. Appellant repeatedly attacked Carrie's credibility at trial, pointing out inconsistencies between her outcries and her trial testimony and assailing her truthfulness. Appellant's opening statement to the jury showed that Carrie's credibility was a large part of his defensive case.[8] And the State's presentation of Kylie's testimony was not repetitive, nor did it take up an

---

[8]Appellant also attacked Kylie's credibility at length during his opening argument and during his cross-examination of Kylie.

14

inordinate amount of time during the two-day, guilt-innocence portion of the trial. Factors one, two, and six weigh in favor of admission. *See, e.g.*, *Lambeth v. State*, 523 S.W.3d 244, 249–50 (Tex. App.—Beaumont 2017, no pet.); *Coleman v. State*, No. 06-16-00002-CR, 2017 WL 382419, at *3–4 (Tex. App.—Texarkana Jan. 27, 2017, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, No. 17-6257, 2017 WL 4423263 (U.S. Dec. 11, 2017); *Alvarez v. State*, 491 S.W.3d 362, 370–71 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

The remaining factors do not show that the probative value of Kylie's testimony about Appellant's prior sexual assaults was substantially outweighed by its prejudicial effect or by its tendency to mislead the jury. Of course Kylie's testimony about Appellant's past sexual behavior with her was prejudicial, but not unfairly so. Indeed, its prejudicial nature arises from the fact that it was especially probative of Appellant's propensity to prey on underage members of his household. *See Belcher*, 474 S.W.3d at 848; *Bradshaw v. State*, 466 S.W.3d 875, 883–84 (Tex. App.—Texarkana 2015, pet. ref'd). We see no indication that Kylie's testimony distracted the jury from the main issues in the case, suggested a decision on an improper basis, or was given undue weight because the jury was ill equipped to evaluate its probative force. *See Lambeth*, 523 S.W.3d at 249–50; *Gonzales v. State*, 477 S.W.3d 475, 481–82 (Tex. App.—Fort Worth 2015, pet. ref'd). The trial court's admission of Kylie's testimony regarding Appellant's past sexual abuse was not a clear abuse of its broad discretion. We overrule point three.

## 2. Drug Use

The trial court also did not clearly abuse its discretion by denying Appellant's request for a mistrial after Kylie stated that she was "sure" Appellant had used drugs in the past. A mistrial is appropriate only in extreme circumstances for a narrow class of prejudicial and incurable errors. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Appellant argues on appeal that Kylie's statement "thr[e]w a skunk in the jury box" and "highly inflamed" the jury, rendering the curative instruction insufficient. But Kylie's brief, unsolicited, and tangential comment about Appellant's supposed drug use is not such an extreme circumstance that any prejudice arising from it was incurable short of a mistrial; therefore, we presume that the jury followed the trial court's instruction. *See Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); *Sparks v. State*, No. 04-12-00494-CR, 2013 WL 5570330, at *3 (Tex. App.—San Antonio Oct. 9, 2013, no pet.) (mem. op., not designated for publication); *see also Ballard v. State*, No. 01-15-00275-CR, 2017 WL 3140033, at *6 (Tex. App.—Houston [1st Dist.] July 25, 2017, pet. filed); *Jackson v. State*, 495 S.W.3d 398, 421 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd), *cert. denied*, 138 S. Ct. 207 (2017). The trial court did not clearly abuse its discretion, and we overrule issue four.

### B. HEARSAY

In his final issue, Appellant challenges the admission of Kylie's testimony in response to the State's question inquiring whether her boyfriend was

16

"controlling": "He didn't want me to have friends, barely had any contact with my family." The trial court overruled Appellant's hearsay objection to this testimony.

Again, we review the trial court's decision to allow testimony over a hearsay objection for a clear abuse of discretion. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). Kylie's statement, however, was not hearsay. The State elicited this testimony to explain why Kylie failed to show up for the trial regarding her sexual-assault allegations against Appellant. It was not offered to show that Kylie's boyfriend was, in fact, controlling; therefore, Kylie's testimony did not fall within the definition of hearsay. *See* Tex. R. Evid. 801(d)(2); *Ellis v. State*, 517 S.W.3d 922, 929–30 (Tex. App.—Fort Worth 2017, no pet.). The trial court did not clearly abuse its discretion by overruling Appellant's hearsay objection, and we overrule issue five.

## IV. CONCLUSION

We conclude that the trial court did not clearly abuse its discretion by overruling Appellant's hearsay objections to Coffman's and Kylie's testimony, by overruling Appellant's rule 403 objection to Kylie's extraneous-offense testimony, or by denying Appellant's request for a mistrial after Kylie stated Appellant used drugs. We also conclude that the trial court did not err by overruling Appellant's objection to Coffman's testimony under the Confrontation Clause. Accordingly, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

17

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 28, 2017