

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00274-CV

_____

IN THE MATTER OF A.B., A JUVENILE

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-105857-17

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Twenty-one years old at the time of the hearing from which this appeal arises, A.B. contends that the juvenile court abused its discretion by waiving its jurisdiction and ordering him transferred to the district court to be prosecuted as an adult for an offense he allegedly committed years earlier when he was a 13-, 14-, or possibly 15-year-old child. *See* Tex. Fam. Code Ann. § 54.02. Under the statute governing waivers and transfers after a respondent in the juvenile court turns 18 years old, the State must prove, among other factors, that the respondent was at least 14 at the time he allegedly committed the offense. *Id.* § 54.02(j)(2)(B). Relying on evidentiary contradictions and ambiguities, in one issue A.B. challenges the legal and factual evidentiary sufficiency of the trial court's finding that he was 14 years old at the time he allegedly committed the offense and, further, asserts that the trial court abused its discretion by arbitrarily waiving its jurisdiction and ordering him transferred to a district court.

Although the evidence concerning A.B.'s age at the time of the alleged incident is fuzzy at best, we must analyze this appeal not under a criminal-law, beyond-a-reasonable-doubt standard but rather under a far less stringent preponderance-of-the-evidence standard; that, after all, is the only quantum of evidence that a trial court needs in this kind of proceeding.[1] We thus hold that the evidence was both legally and

---

[1]We express no opinion about whether someone in A.B.'s position would be better and more fairly served by a more demanding burden of proof.

factually sufficient and that the trial court did not abuse its discretion. As a result, we overrule A.B.'s contention and affirm the trial court's waiver and transfer order.

## Background

The Texas Family Code governs proceedings in all cases involving delinquent conduct engaged in by a person who was a child at the time the alleged conduct occurred. *Id.* § 51.04(a); *In re D.S.*, No. 02-17-00050-CV, 2017 WL 3187021, at *1 (Tex. App.—Fort Worth July 27, 2017, pet. denied) (mem. op.). In such cases, the juvenile court's original jurisdiction is exclusive. Tex. Fam. Code Ann. § 51.04(a); *D.S.*, 2017 WL 3187021, at *1.

While the family code vests juvenile courts with exclusive original jurisdiction over all proceedings involving delinquent children, it also provides that those courts have no jurisdiction to adjudicate or conduct a disposition hearing on a person who is 18 years old or older. *See re N.J.A.*, 997 S.W.2d 554, 555 (Tex. 1999); *D.S.*, 2017 WL 3187021, at *1. Rather, after a person has turned 18, the juvenile court's authority is generally limited to doing one of two things: it can (1) waive its exclusive original jurisdiction and transfer the person to the appropriate district or criminal district court in accordance with § 54.02(j)'s requirements or (2) dismiss the case. *N.J.A.*, 997 S.W.2d at 556–57; *D.S.*, 2017 WL 3187021, at *1.

Here, the State alleged that A.B. committed the offense of aggravated sexual assault of a child younger than 14 years of age, a first-degree felony, against Ariana[2] on or about January 1, 2011. Tex. Penal Code Ann. § 22.021(a)(2)(B), (e). Ariana testified that the offense occurred while she was spending the night at A.B.'s—her cousin's—house with his mother and two of his siblings, a sister and a younger brother. But she could only roughly estimate when the offense allegedly occurred, initially estimating that she was seven or eight years old; later suggesting that she was eight or nine; and, by the time she testified in the summer of 2018, expanding the possibilities to having been eight, nine, or perhaps ten years old.[3]

To properly waive its jurisdiction and transfer the case under the family code, the juvenile court had to find that (1) the respondent (A.B.) was currently 18 years old or older; (2) A.B. was between 14 and 17 years old at the time he allegedly committed the offense; (3) the alleged offense had not been adjudicated or no adjudication hearing concerning the offense had been conducted; (4) by a preponderance of the evidence, that for a reason beyond the State's control it had not been practicable to proceed in the juvenile court before A.B.'s eighteenth birthday; and (5) there was probable cause to believe that he committed the alleged offense. Tex. Fam. Code Ann. § 54.02(j)(1), (2)(B), (3), (4)(A), (5).

---

[2]We use an alias to protect her identity. *See* Tex. R. App. P. 9.8(c).

[3]Obviously, the older Ariana was, the older A.B. was as well.

Complying with § 54.02(j), the trial court found that (1) A.B. was 18 years old or older; (2) A.B. was 14 years old at the time the alleged acts occurred; (3) no adjudication hearing had been conducted; (4) for reasons beyond the State's control, it was not practicable to proceed in juvenile court before A.B.'s eighteenth birthday because by the time that Ariana made her outcry, A.B. was already 19 years old; and (5) based on Ariana's two forensic interviews, there was probable cause to believe that A.B. committed the alleged first-degree felony. *See id.* The only finding that A.B. disputes is the second one—that he was as old as 14 years when the offense allegedly occurred.

## Standard of Review

By a preponderance of the evidence, the State bears the burden of persuading the juvenile court that waiving its jurisdiction is appropriate. *Moon v. State*, 451 S.W.3d 28, 45 (Tex. Crim. App. 2014);[4] *see* Tex. Fam. Code Ann. § 51.17(a) ("Except . . . for

[4]Although *Moon* involved a juvenile issue, the court of criminal appeals decided the issue based on former article 44.47 of the Texas Code of Criminal Procedure, which precluded the respondent from immediately appealing the juvenile court's transfer order and which required the respondent to wait until after he had been convicted in the adult criminal court to complain, on appeal, about any purported error in the juvenile court's transfer order. *Moon*, 451 S.W.3d at 39–40. Effective September 1, 2015 (shortly after the December 2014 *Moon* decision), the legislature repealed article 44.47 and added § 56.01(c)(1)(A) to the family code, thereby allowing an appeal directly from the juvenile court's order waiving jurisdiction. *See* Act of May 12, 2015, 84th Leg., R.S., ch. 74, §§ 3–4, sec. 56.01(c)(1)(A), 2015 Tex. Sess. Law Serv. 1065, 1065 (current version at Tex. Fam. Code Ann. § 56.01(c)(1)(A)). Because of this change, any party appealing our decision no longer goes to the court of criminal appeals but to the supreme court, which has jurisdiction over juvenile appeals. *In re C.A.P.*, No. 10-18-00193-CV, 2018 WL 5662131, at *1 n.1 (Tex. App.—Waco Oct.

the burden of proof to be borne by the state in adjudicating a child to be delinquent or in need of supervision . . . or otherwise when in conflict with a provision of this title, the Texas Rules of Civil Procedure govern proceedings under this title."). We thus review a juvenile court's factual findings supporting its waiver-and-transfer order under traditional civil evidentiary-sufficiency principles. *See Moon*, 451 S.W.3d at 47; *D.S.*, 2017 WL 3187021, at *2.

In determining whether legally sufficient evidence supports a finding under review, we consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *D.S.*, 2017 WL 3187021, at *2; *see also In re G.B.*, 524 S.W.3d 906, 914 n.13 (Tex. App.—Fort Worth 2017, no pet.). If more than a scintilla of evidence supports the finding, then legally sufficient evidence supports it, and a legal-sufficiency challenge fails. *D.S.*, 2017 WL 3187021, at *2; *G.B.*, 524 S.W.3d at 914 n.13.

Under a factual-sufficiency challenge, we consider all the evidence presented to determine if the court's finding is so against the great weight and preponderance of that evidence as to be clearly wrong and unjust. *D.S.*, 2017 WL 3187021, at *2. Put another way, we set the finding aside only if, after considering and weighing all the evidence pertinent to that finding, we determine that the credible evidence supporting

---

31, 2018, pet. denied). The supreme court has not addressed the method of review as *Moon* explained it, but our analysis will nonetheless accord with *Moon. See id.*

6

it is so weak or so contrary to the overwhelming weight of all the evidence that it should be set aside. *G.B.*, 524 S.W.3d at 914 n.13.

If the juvenile court's findings are supported by legally and factually sufficient evidence, then we review the ultimate waiver decision under an abuse-of-discretion standard. *See Moon*, 451 S.W.3d at 47; *D.S.*, 2017 WL 3187021, at *3; *G.B.*, 524 S.W.3d at 916–17. To determine whether the juvenile court abused its discretion, we ask whether it acted without reference to the guiding rules or principles in reaching its decision. *See Moon*, 451 S.W.3d at 47; *D.S.*, 2017 WL 3187021, at *3.

The factfinder alone judges the witnesses' credibility and the weight to be given their testimony and is free to accept all, reject all, or accept only parts of any witness's testimony. *In re E.P.*, 963 S.W.2d 191, 193 (Tex. App.—Austin 1998, no pet.). The factfinder is free to accept or reject any apparent inconsistencies in the testimony and reconcile them. *See Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018); *In re T.M.*, No. 04-07-00487-CV, 2008 WL 2115763, at *2 (Tex. App.—San Antonio May 21, 2008, no pet.) (mem. op.). As an appellate court, we must avoid substituting our judgment for the factfinder's. *T.M.*, 2008 WL 2115763, at *2.

## The Evidence

A.B. was born in August 1996 and so turned 14 years old in August 2010. According to a September 2017 "pre-diagnostic study" prepared for the juvenile court by court intake officer Patsy Paxton, who interviewed A.B. and his parents in January 2017 (when A.B. was 20), A.B. graduated from high school in 2014 with a B average

and was on his school's swim team for three years. He later moved to Austin for community college, where, at the time of the January 2017 intake interview, he was one semester away from earning his degree, was living in a dormitory with a roommate, and was maintaining an A/B average while working two jobs.

A.B. has no criminal record[5] nor any involvement with gangs or previous juvenile services. His parents, who have been married for over two decades, reported to Paxton that A.B. had "no history of behavior problems in the home. He has had good relationships with all family members. [A.B.] was always respectful and followed rules in the home."

As noted, the sole evidentiary dispute centers on whether Ariana described an offense committed before or after August 2010, the month in which A.B. turned 14. Ariana was born in June 2002 and was 16 when she testified in July and August 2018.

The record indicates that in May 2015, when Ariana was just one month shy of her thirteenth birthday, she and her father went to the police station to report that A.B., her cousin, had sexually assaulted her. At the transfer hearing, Ariana's father denied having told the police anything and asserted that it was Ariana who spoke to

---

[5]Paxton's September 2017 report reflects a February 2017 arrest in Travis County for DWI, which would have been roughly three months after the Fort Worth Police Department arrested A.B. and "referred [him] out of custody" the day before Thanksgiving 2016, and less than a month after Paxton interviewed A.B. and his parents.

the police. But Ariana remembered things differently, stating that her father had done all the talking.[6]

Ariana's father explained what had precipitated her outcry. About three days before going to the police station,[7] he had confronted her about being at a friend's home where there were boys, alcohol, and marijuana but no adult supervision. Concerned about the presence of boys, Ariana's father broached the subject of whether she was sexually active, and when Ariana denied having had sex, her father— "kind of playing the bluff game with her"—proposed taking her to the doctor, who— he asserted—would be able to tell. Ariana responded by making her outcry that A.B. had sexually assaulted her.

Ariana's father had no idea when the alleged offense had occurred and could not even recall whether Ariana had given him that information, explaining, "I can't remember the details because all I heard was—to be honest with you, was my daughter being violated." "And after that," he continued, "it was kind of the just—I mean, you know, with me being a father, hearing that from your daughter, I just—I wasn't looking for details or anything like that. I just immediately was upset."

---

[6]Ariana did not remember, though, the date, the month, or even the year when she and her father had gone to the police station.

[7]According to the second detective who worked on the case, the police report indicated Ariana made her outcry three days earlier. At the hearing, Ariana's father could not recall when she told him other than that it was before they went to the police station.

The first detective assigned to the case arranged a forensic interview in July 2015, and at that interview Ariana, who identified A.B. by name, asserted that the offense had occurred when she was seven or eight years old.[8] The assigned detective apparently later lost the DVD recording of this first interview, so the interviewer's notes were the only record of it.

Ariana's case then encountered an unexpected delay when the detective handling the case came under administrative investigation. Although the record does not reflect exactly when, the State's *Brady*[9] notice shows that detective was ultimately "terminated for neglect of duty in violation of General Order of the Fort Worth Police Department General Orders/Code of Conduct 429.02 and for violation of General Order 704.00(F)(1)." General Order 704.00(F)(1) states that "[e]mployees shall be truthful at all times in their dealing with co-workers, supervisors, managers and other law enforcement personnel. Any statement or omission of pertinent or material information which misrepresents or misleads others will be considered a false statement." The record before us contains no other details about the original detective's apparent misrepresentation(s) that led to his termination, and no witness at the hearing referred to the State's *Brady* notice.

---

[8]If Ariana was seven when the offense occurred, that would have placed it sometime between June 2009 (when Ariana turned seven) and June 2010 (when she turned eight). If she was seven, A.B. was necessarily under the age of 14. But if Ariana was eight when the offense occurred, A.B. could have been either 13 or 14.

[9]*Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963).

In any event, more than a year after Ariana and her father had first made a report, the case was reassigned to a second detective, Samantha Horner, who sent Ariana for a second forensic interview—this time in August 2016—with the same forensic interviewer. At this second interview, Ariana asserted that she was eight or nine when the offense occurred but was unsure of her attacker's name, that is, whether it was A.B. or Alex,[10] one of A.B.'s brothers.

Although the paperwork for both forensic interviews showed that the offense allegedly occurred in 2011, the interviewer said that the first detective, not Ariana, provided that information; the interviewer had no idea where the first detective had gotten it. The same 2011 date appeared on the form for the second interview, but the interviewer thought that the second detective had simply copied that information from the first form.

Supplying a possible reason for the 2011 date's appearance, Detective Horner testified that the May 2015 police report made by an Officer Pelton indicated that the alleged offense occurred while Ariana was spending the night at A.B.'s "sometime in the year 2011." The police report, however, was not admitted into evidence.

In addition to sending Ariana for a second forensic interview, Detective Horner also sent her in August 2016 to Cook Children's Hospital to be seen by a

---

[10]An alias. *See* Tex. R. App. P. 9.8(c). We use aliases in this opinion for other family members as well.

CARE[11] nurse. At the 2018 transfer hearing, Ariana could not recall having gone to Cook Children's Hospital. Regardless, the CARE nurse who saw her stated that Ariana had told her that the incident occurred when Ariana was about eight years old.

But Ariana testified in 2018 that she thought it had happened when she was nine or ten and did not remember ever saying that she had been seven or eight; she added that it could have occurred when she was eight, nine, or ten.

Another piece of evidence arguably anchored the alleged offense as having occurred before rather than after A.B.'s fourteenth birthday. A.B.'s pre-diagnostic study, which was admitted at the transfer hearing, showed that A.B. had two brothers, with the younger of the two—Bryan—having been born in March 2010. But when A.B.'s counsel asked Ariana if she knew Bryan, she was unaware that A.B. even had a second brother and denied ever having met him. She also denied that a baby was there the night of the alleged incident. Ariana testified that after this incident, she never went back to spend the night at A.B.'s home.

During argument, A.B.'s counsel emphasized that the offense must therefore have taken place before Bryan was born in March 2010 because Ariana had no idea who he was; and if the alleged offense occurred before March 2010, it necessarily happened before A.B.'s fourteenth birthday, which would have been five months later, in August.

---

[11]Child-advocacy resources and evaluation. *See Wells v. State*, 558 S.W.3d 661, 665 (Tex. App.—Fort Worth 2017, pet. ref'd).

After the fact, Ariana's mother also tried to determine when the alleged offense occurred. She testified that she noticed a difference in Ariana's behavior when Ariana was about eight years old, and she recalled that the only time Ariana went to her cousins' home by herself—without her older sister, Barbara—was when Ariana was about eight. Although Ariana testified that Barbara was not with her that night, Ariana also indicated that she had spent the night at A.B.'s home on other occasions but did not remember—one way or the other—whether Barbara was with her.

Detective Horner added more timing-related information: "[G]oing off of my memory, [Ariana] remembered that she was on winter break from school, and that's where we came [up] with approximately January of 2011." But Detective Horner admitted that nothing in writing supported her recollection. (Detective Horner might not have documented this information because she placed no importance on A.B.'s age at the time the offense allegedly occurred, asserting her belief that the State could prosecute A.B. even if he had committed the offense when he was 12 or 13 years old.)

Ariana herself testified that she did not remember the date, the month, the year, or even the time of year. In a similar manner, she did not remember the year that she made her outcry to her parents, although she remembered that she was 12 or 13 years old and that it was while she was attending middle school.

## Discussion

Despite the uncertainty surrounding A.B.'s age at the time of the alleged offense and the possibility that he was under 14, and despite Ariana's incomplete and

13

contradictory recollections, the record contains some evidence, as we have recounted it above, that the alleged incident occurred after August 2010 and therefore after A.B. turned 14. We hold that there is more than a scintilla of evidence supporting the trial court's finding and thus that the evidence is legally sufficient. *See D.S.*, 2017 WL 3187021, at \*2; *G.B.*, 524 S.W.3d at 914 n.13.

Although A.B. correctly asserts that the evidence is contradictory and inexact, the trial court as the factfinder was free to accept or reject any or all of any witness's testimony. *See E.P.*, 963 S.W.2d at 193. As the factfinder, the trial court was also free to reconcile any apparent inconsistencies in the testimony. *See Anderson*, 550 S.W.3d at 616. This means that the trial court was free to discount both Ariana's not knowing Bryan and the forensic interviewer's note that Ariana told her during the first interview that the offense occurred when Ariana was seven or eight; it also means that the trial court was free to give greater weight to the testimony suggesting that the offense occurred when she was eight—or even older, for that matter—and was consequently more likely to have occurred after A.B. had turned 14 years old. *See id.*

Moreover, the trial court was free to rely on Horner's testimony that she was able to determine that the offense most likely happened around January 1, 2011 "[f]rom the outcries" and because Ariana was "pretty sure it happened around 2011." That 2011 timeframe, coupled with Horner's explanation that Ariana "remembered that she was on winter break from school," provides some evidence that the offense likely occurred in the winter of 2011. Because A.B. turned 14 in the

14

summer of 2010, the trial court's finding is supported by sufficient evidence. Thus, we hold that the evidence was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust and was thus factually sufficient. *See D.S.*, 2017 WL 3187021, at *2; *G.B.*, 524 S.W.3d at 914 n.13.

Having concluded that the trial court's finding is supported by legally and factually sufficient evidence, we now consider whether the juvenile court abused its discretion by waiving its jurisdiction and transferring A.B.'s case. *See Moon*, 451 S.W.3d at 47; *D.S.*, 2017 WL 3187021, at *4. The juvenile court's waiver and transfer order shows that it based its decision on its conclusion that the State had met all five of § 54.02(j)'s criteria. A.B. does not contest that the State met four of the five criteria, and we have held the evidence legally and factually sufficient to support the final criterion—his age—that he did contest. We now further hold that the trial court did not abuse its discretion by waiving its jurisdiction and transferring A.B.'s case because the record shows that it acted with reference to both the evidence and the guiding rules and principles in reaching its decision. *See Moon*, 451 S.W.3d at 47; *D.S.*, 2017 WL 3187021, at *4.

Because our standard of review is not one that calls for proof beyond a reasonable doubt but simply a preponderance of the evidence, we overrule A.B.'s issue.

## Conclusion

Having overruled A.B.'s sole contention, we affirm the trial court's order.

15

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: February 28, 2019