

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00194-CR

———————————————

MICHEAL EARL MOOSE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR16-0365

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In two points, appellant Micheal Earl Moose appeals his convictions for continuous sexual abuse of a young child and indecency with a child. Moose argues that the trial court erred by admitting (1) a recording of his interview with police and (2) his relative's testimony concerning a prior episode of sexual abuse. Because we conclude that the trial court properly admitted both forms of evidence, we affirm.

## I.     Background

In February of 2016, Moose's step-daughter Gwen[1] came forward with allegations that Moose had sexually abused her. She explained that she was four years old when Moose began dating her mother, and he began to abuse Gwen when she was five or six.

On May 5, 2016, Moose was indicted on two counts. Count I of the indictment charged Moose with continuous sexual abuse of a child. Tex. Penal Code Ann. § 21.02. Count II charged Moose with indecency with a child by contact. *Id.* § 21.11(a)(1).[2]

A jury heard the case in March of 2018. The State sponsored the testimony of several witnesses, including the police officer and school counselor who heard Gwen's outcry. Gwen herself described more than twenty episodes of abuse in detail.

---

[1]We use pseudonyms to protect the complainants' identities. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005).

[2]The indictment was later superseded to add a third count, which is not at issue in this appeal.

Detective Brett Stagner testified concerning his interview with Moose, during which Moose made incriminating statements. An adult relative of Moose, whom we will refer to as Mary, testified that Moose had sexually abused her in 2003, when she was a child.

At the conclusion of the evidence, the jury found Moose guilty on Counts I and II. The trial court assessed punishment at sixty-five years on Count I and twenty years on Count II. *See* Tex. Penal Code Ann. §§ 12.32(a), 12.33(a). Moose appeals.

## II. Moose Was Not in Custody During His Interview

In his first point, Moose contends that the trial court abused its discretion by denying suppression of his recorded statements to law enforcement. Moose first argues that law enforcement used a deliberate two-step method of interrogation without advising him of his *Miranda* rights, in violation of *Missouri v. Seibert*. 542 U.S. 600, 612–13, 124 S. Ct. 2601, 2610 (2004) (plurality op.).

In *Seibert*, police employed a two-step strategy during a custodial interrogation to reduce the effect of *Miranda* warnings: A detective exhaustively questioned Seibert until she confessed to murder and then, after a break, gave Seibert *Miranda* warnings and led her to repeat her prior confession. *Bobby v. Dixon*, 565 U.S. 23, 30, 132 S. Ct. 26, 31 (2011) (summarizing *Seibert*). Applying a fact-sensitive approach, a plurality of the Court held that Seibert's second confession was inadmissible even though it was preceded by a *Miranda* warning. *Id.*, 132 S. Ct. at 31. Justice Kennedy concurred in the judgment, noting he would apply a narrower test applicable only in cases in which

3

a two-step interrogation technique was used in a calculated way to undermine the protections of *Miranda*. *Id.* at 30–31, 132 S. Ct. at 31 (citing *Seibert*, 542 U.S. at 622, 124 S. Ct. at 2616 (Kennedy, J., concurring)). From the plurality and Justice Kennedy's narrower concurrence, the Texas Court of Criminal Appeals has distilled a majority rule: one that excludes evidence only from two-step interrogations involving deliberate police misconduct. *Carter v. State*, 309 S.W.3d 31, 38 (Tex. Crim. App. 2010).

However, Moose never raised this two-step argument during trial. Instead, he generally argued that his statements were derived from "a coerced interview and, therefore, inadmissible."[3] We do not apply hyper-technical requirements for error preservation. *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016). Instead, a party need only let the trial court know what he wants and why he feels himself entitled to it clearly enough for the judge to understand him. *Id.* But a general or imprecise objection will not preserve error for appeal unless the legal basis for the objection is obvious to the court and to opposing counsel. *Id.* (refusing to consider a two-step argument because it was not preserved). Because Moose never voiced any argument concerning two-step interrogation beyond an imprecise objection to coercion, his argument is not preserved for our review. *See id.*

---

[3]Counsel for Moose also stated, "Judge, we would reurge our objections that we did at pretrial . . . ." However, Moose's pretrial argument was much the same as his general objection at trial: "Judge, we're asking that the entire video be suppressed because of coercion."

4

Moose next argues that his statements should be suppressed because police employed coercive tactics during his interview. As Moose points out, Detective Stagner agreed at trial that he applied "psychological pressure" during his interview with Moose, attempting to "coerce" him into telling the truth. Moose argues that the coercion was so complete that it was tantamount to custody, and because the detectives never incanted *Miranda* or the comparable guarantees enshrined in the code of criminal procedure, his statements must be suppressed. We disagree, for as we explain, the circumstances of Moose's interview fell far short of custody.

We apply a bifurcated standard of review to assess the trial court's custody determination. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). We give "almost total deference" to the trial court's assessments of historical fact and conclusions with respect to mixed questions of law and fact that turn on credibility and demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We must review de novo mixed questions of law and fact that do not turn on credibility and demeanor.[4] *Saenz*, 411 S.W.3d at 494. When, as here, the trial court does not enter findings of fact, we view the evidence "in the light most favorable to the trial court's ruling" and "assume that the trial court made implicit findings of fact that support its

---

[4]The fact that credibility and demeanor are important factors in the trial court's assessment does not always mean that the question "turns" on an evaluation of credibility and demeanor. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). Rather, a question "turns" on credibility and demeanor "when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue." *Id.*

5

ruling as long as those findings are supported by the record." *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007).

Prior to custodial questioning, a suspect must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S. Ct. 2394, 2401 (2011). Article 38.22 of the Texas Code of Criminal Procedure requires a "virtually identical" set of warnings, which are likewise required only when there is custodial interrogation under the meaning of *Miranda*. *Herrera*, 241 S.W.3d at 526. The State may not use a defendant's statements stemming from a custodial interrogation unless it demonstrates the use of the prescribed procedural safeguards. *Wilson v. State*, 442 S.W.3d 779, 784 (Tex. App.—Fort Worth 2014, pet. ref'd).

To determine whether an individual was in custody, a court must examine all of the objective circumstances surrounding the interrogation. *Stansbury v. California*, 511 U.S. 318, 322–23, 114 S. Ct. 1526, 1529 (1994); *Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010). A person is in custody only if a formal arrest has been made, or if, under the circumstances, an objectively reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *See Nguyen v. State*, 292 S.W.3d 671, 677–78 (Tex. Crim. App. 2009).

In *Dowthitt v. State*, the court identified four general situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of

action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when law enforcement officers manifest that there is probable cause to arrest and the officers do not tell the suspect that he is free to leave. *Saenz*, 411 S.W.3d at 496 (quoting *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)). With regard to the fourth scenario, the officer's belief that probable cause exists must be manifested to the suspect such that, when combined with other circumstances, a reasonable person would believe that he is under restraint to the degree associated with an arrest. *Dowthitt*, 931 S.W.2d at 255.

Moose asserts that his interview fell into the fourth version of custody under *Dowthitt*. Moose generally contends that during his two-hour-and-forty-five minute interview, he was subjected to "badgering, hostility, skepticism, and repetition" and to such "hostile, sometimes sarcastic beratement" as would constitute custody. He asserts that the atmosphere was one in which he could not leave until he told the detectives what they wanted to hear.

There are multiple flaws in Moose's argument. First, Moose misrepresents the situation when he portrays it as hostile and confining. The evidence from the suppression hearing showed that Moose voluntarily drove himself to the Weatherford

7

Police Department to meet with Detective Stagner.[5] When he arrived, he was not patted down, handcuffed, or otherwise restrained. The door to the interview room was not locked. Moose was offered water, and he was not denied food or the use of facilities. When Moose received a text message mid-interview, detectives told Moose that he was free to respond to it. Moose was told multiple times that he was free to leave whenever he chose. During the interview, detectives told Moose, often and in soft tones, that they did not look down on him and that they were not angry with him. The detectives repeatedly assured Moose that their intention was to help him. In short, the situation was anything but the restrictive confrontation that Moose depicts.[6]

Second, even assuming that the situation were otherwise, Moose fails to explain how a pattern of hostility would translate into a manifestation of probable cause under the fourth *Dowthitt* scenario. Moose does not identify any point at which officers discussed their belief that Moose was subject to arrest. The nearest that the detectives approached to this line was in asking Moose to consider a hypothetical: *if* he were prosecuted, wouldn't the prosecutor consider whether Moose was remorseful and cooperative? The detectives never ventured beyond this hypothetical to tell

---

[5]As a general rule, when a person voluntarily accompanies law enforcement to a certain location, even though he knows or should know that law enforcement suspects that he may have committed or may be implicated in committing a crime, that person is not restrained or in custody. *McCulley v. State*, 352 S.W.3d 107, 115 (Tex. App.—Fort Worth 2011, pet. ref'd).

[6]Moose also mentions that he told officers of his diagnoses with post-traumatic stress disorder and clinical depression. We fail to see how Moose's disclosure concerning his medical health contributes to a custody determination.

Moose that the prospect of arrest or prosecution was real or imminent, never boasted about the strength of their case against him, and certainly never used the words "probable cause to arrest."

Finally, even assuming that the detectives had told Moose that they had probable cause, we again point out that the detectives told Moose multiple times that he was free to leave. Roughly twenty minutes into the interview, Detective Stagner promised Moose that no matter what he disclosed during the interview, he was going home that day. An hour and twenty minutes into the interview, Moose directly asked if he was being arrested. Detective Stagner told him, "No sir, you're free to get up and leave any time." An hour and fifty minutes into the interview, Moose again expressed doubt that he was free to leave. The detectives assured him that he was free to walk out, going so far as to swing the door wide and gesture down the hall. Finally, roughly two hours and twenty minutes into the interview, the detectives again told Moose he could stay or go, "It's whatever you want to do." Moose decided to go, and the detectives did not follow. *See Wilson*, 442 S.W.3d at 786 (relying on similar facts to conclude that the fourth form of custody under *Dowthitt* was not shown).

The officers never expressed to Moose a belief that they possessed probable cause to arrest him, and they repeatedly told Moose that he was free to leave. Moose therefore was not in custody under the fourth *Dowthitt* scenario. *See Dowthitt*, 931 S.W.2d at 255. Moose does not claim that his encounter with the detectives qualifies

9

under any other definition of custody under *Dowthitt*. We therefore agree with the trial court's implied finding that Moose was not in custody during his interview.

We overrule Moose's first point.

### III. Extraneous Offense Admissible

In his second point, Moose protests that the trial court improperly admitted the testimony of his relative Mary.

Mary described an incident of sexual abuse that occurred in 2003, when she was ten years old. According to Mary, the incident occurred in summertime, likely August, when she and her siblings had visited Moose for the weekend at his apartment in Haltom City. On Friday night, she and her siblings went swimming. Mary recalled that on Saturday night, she and Moose were alone in the living room, on the pull-out couch, while her siblings were in the bedroom. She testified that she was wearing pajamas when Moose came into the room. According to Mary, Moose shushed her as he took off her pants and inserted his penis into her mouth. Mary testified that he then duct-taped her mouth shut and inserted his penis into her vagina. Mary recounted that when Moose had finished, he threatened her with a piece of wood, saying that he would hit her with it if she told anyone. Mary testified that on subsequent weekends, she refused to return to Moose's apartment, and she did not see him again for several years.

Mary testified that she returned to school a few weeks after her assault, and her class watched a video that encouraged the children to speak up if anyone was hurting

them: "We were watching a video of parents or adults and children and they were hurting the children and saying, we can't tell anybody, don't tell anybody, this is our secret. And I told my teacher, [Moose] did this to me." According to Mary, she told a teacher named Ms. Vincent about the abuse, and later, she spoke with a school counselor. Mary testified that she was then examined at a hospital, but she was not aware of the results of the exam.

On cross-examination, Moose impeached Mary's recollection of events. Mary was confronted with a police report that stated that the first person she spoke with was instead named Ms. Turan, not Ms. Vincent. Mary did not recall anyone named Ms. Turan, though she agreed that could have been the school counselor's name. According to the police report, Mary reported that she was sexually assaulted twice, not just once. Mary also did not recall having told anyone at school that Moose took showers with her and put his hands down her pants, which was also stated in the police report.

Moose contends that in light of the deficiencies in Mary's recollection, the trial court erred by admitting her testimony because the State failed to satisfy the requisites of article 38.37. Typically, the State cannot provide evidence of prior crimes, wrongs, or other bad acts to show that the defendant acted in accordance with that character or had a propensity to commit the crime. Tex. R. Evid. 404(b)(1); *Alvarez v. State*, 491 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). In the context of certain sexual offenses against children, article 38.37 suspends the default rule to

11

recognize that the "special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts." *Alvarez*, 491 S.W.3d at 367 (quoting *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd)). Under article 38.37, the State is allowed to provide evidence of other children whom the defendant has sexually assaulted for any bearing the evidence has on relevant matters, including the defendant's character and acts performed in conformity therewith. Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). But before an extraneous offense may be admitted under article 38.37, the State must satisfy certain procedural requirements. *Alvarez*, 491 S.W.3d at 367. Among them, the trial court must conduct a hearing outside the presence of the jury to determine whether the evidence is adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a.

Moose first contends that the trial court did not satisfy this requirement because the evidence is insufficient to show beyond a reasonable doubt that he assaulted Mary. We review the trial court's decision to admit this testimony for a clear abuse of discretion. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd). If the court's decision falls outside the "zone of reasonable disagreement," it has abused its discretion. *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort Worth 2018, pet. ref'd).

Mary testified in detail concerning the abuse. It is well settled that the uncorroborated testimony of a complainant may be sufficient to show an offense. *Id.* (citing *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978)); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.) (mem. op.). While Moose drew out certain inconsistencies in Mary's recollection of events, it would remain the "sole province" of the factfinder to resolve any question of credibility. *Stanley v. State*, No. 02-17-00084-CR, 2018 WL 3153542, at *7 (Tex. App.—Fort Worth June 28, 2018, pet. ref'd) (mem. op., not designated for publication); *see Gonzales v. State*, 477 S.W.3d 475, 480–81 (Tex. App.—Fort Worth 2015, pet. ref'd) (concluding that the evidence was sufficient to support admission under article 38.37 despite gaps in the complainant's memory). We conclude that the trial court did not stray from the zone of reasonable disagreement by determining that Mary's testimony was sufficient to satisfy the requirements of article 38.37. *See Perez*, 562 S.W.3d at 689.

Moose next asserts that Mary's testimony was irrelevant to any question before the jury. We disagree. Mary's testimony cast light on Moose's propensity to sexually abuse the children he was charged with protecting. *See Wells*, 558 S.W.3d at 670 (concluding that article 38.37 evidence was "especially probative of Appellant's propensity to prey on underage members of his household"); *Mosier v. State*, No. 02-16-00159-CR, 2017 WL 2375768, at *6 (Tex. App.—Fort Worth June 1, 2017, pet. ref'd) (mem. op., not designated for publication) (determining that there was

13

"significant" probative value in article 38.37 evidence that "exemplified the chronic nature of the continued abuse"). This evidence suggested that Moose had a criminal proclivity to abuse children, and it was therefore directly relevant to the central question in Moose's prosecution: whether Moose abused Gwen. *See* Tex. R. Evid. 401.

Finally, Moose contends that the trial court erroneously admitted the evidence in violation of rule 403. Under rule 403, otherwise relevant evidence may be excluded if its probative value is substantially outweighed by its unfairly prejudicial effect. Tex. R. Evid. 403. Even when extraneous bad-act evidence is relevant under article 38.37, such evidence must meet the dictates of rule 403, *if* that issue is raised in the trial court. *Wells*, 558 S.W.3d at 669.

However, Moose did not object to Mary's testimony on the basis of rule 403 in the trial court. Rather, he argued only that her testimony was irrelevant and that there was insufficient evidence to prove the offense of which she complained. The appellant's argument on appeal must comport with the argument made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Because Moose's complaint on appeal does not comport with his trial objections, he has forfeited his final argument.

We overrule Moose's second point.

## IV.    Conclusion

We affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 23, 2019