

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00016-CR

———————————————————

Esteban Ruiz, Appellant

V.

The State of Texas

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1520346D

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury convicted Estaban Ruiz of aggravated sexual assault of a child and assessed his punishment at 15 years' imprisonment. After sentencing, Ruiz appealed, and in one issue, he contends that the trial court erroneously prevented him from presenting evidence showing that another person committed the offense. We affirm.

## Background

While in first grade, Irene[1] made a sexual-abuse outcry and identified her "cousin"—whom she described as the man married to her sister—as the perpetrator. Ruiz was the man married to Irene's sister.

At Irene's initial forensic interview, she made no outcry at all. Thereafter, Irene consistently identified Ruiz as the person who sexually abused her.

But Velia—Ruiz's wife and Irene's older sister—thought that a family friend identified as Chiva was the perpetrator. The State objected and argued that Velia's testimony was irrelevant, was far more prejudicial than probative, and would have contained inadmissible hearsay.

In a bill of exception, Velia testified that

- Chiva had sexually abused her years earlier when she was ten or eleven years old;

- Velia learned that Chiva had taken Irene places by himself;

---

[1]We use a pseudonym to refer to the complainant. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

- Velia broached the subject of improper touching with Irene, and when Velia mentioned Chiva, Irene seemed surprised, which confirmed Velia's suspicion that Chiva was touching Irene;

- Irene made an outcry a few months later; and

- Chiva returned to Mexico around the same time that Irene had made her outcry.

Velia thought that Chiva was the person who had molested her younger sister. *See* Tex. R. App. P. 33.2; *see also* Tex. R. Evid. 103(a)(2), (c) (addressing offers of proof).

The trial court sustained the State's objections.

## Standard of Review

We review the trial court's decision to admit or exclude evidence—including its decision regarding whether the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence substantially outweighs the disputed evidence's probative value—under an abuse-of-discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370, 372 (Tex. Crim. App. 2018). Decisions lying outside the zone of reasonable disagreement constitute an abuse of discretion. *Id.* Provided the trial court's ruling falls within the reasonable-disagreement zone, we may not substitute what we would have done for what the trial court actually did. *Id.*

## Applicable Law

Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

3

prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. At the outset, we recognize that Rule 403 favors admitting relevant evidence and presumes that relevant evidence will generally be more probative than prejudicial. *See Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd) (citing *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006)).

When conducting a Rule 403 analysis, a trial court must balance

- the proffered evidence's inherent probative force along with

- the proponent's need for that evidence

  against

- the evidence's tendency to suggest deciding an issue on an improper basis,

- the evidence's tendency to confuse or distract the jury from the main issues,

- the evidence's tendency to encourage the jury to give it undue weight because it lacks other information needed to evaluate the evidence's probative force, and

- the likelihood that presenting the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gonzalez*, 544 S.W.3d at 372.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee criminal defendants a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986). Showing that someone else committed the crime falls within that right. *See Wiley v. State*, 74 S.W.3d 399, 405–06 (Tex. Crim. App. 2002). But the Constitution leaves wide

4

latitude to judges to exclude evidence that is only marginally relevant or that unduly poses certain risks, such as harassment, prejudice, or confusion of the issues. *Crane*, 476 U.S. at 689–90, 106 S. Ct. at 2146. And judges may apply evidentiary rules that are themselves designed to serve the interests of fairness and reliability—even if the defendant would prefer to see certain evidence admitted. *Id.* at 690, 106 S. Ct. at 2146.

In the Rule 403 context, when determining whether the counterfactors substantially outweigh the disputed evidence's probative value, alternative-perpetrator evidence presents special problems to which courts must be sensitive. *Wiley*, 74 S.W.3d at 406. Before a court may admit alternative-perpetrator evidence, the defendant must show that his proffered evidence—on its own or in combination with other evidence—suffices to link the alleged crime and the alleged alternative perpetrator. *Id.* A defendant must show more than unsupported speculation that another person may have committed the offense. *Id.* at 407. Speculatively blaming someone else gravely risks confusing the jurors by inviting them to use their emotions and prejudices—bases extrinsic to the evidence—rather than rational inferences supported by the evidence. *See id.*

**Discussion**

For analytical purposes, we will assume that the proffered evidence had some relevance—according to Velia, Irene was in an environment in which a known child molester had access to her, and Irene later made an outcry.

5

But on this record, the trial court could have reasonably concluded that Velia's testimony amounted to nothing more than speculation. "Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). To speculate is "to review something . . . usu[ally] with an element of doubt or without sufficient evidence." *Speculate*, Webster's Third New Int'l Dictionary (2002). A conclusion reached by speculation may not be completely unreasonable, but as proof, it lacks sufficient evidentiary support. *See Hooper*, 214 S.W.3d at 16.

Here, Velia was guessing that Chiva abused Irene based on Velia's own purported experiences with him and on Irene's nonverbal response to Chiva's name when Velia was talking with Irene about improper touching—a nonverbal response that Velia interpreted in a manner consistent with her own fears. Velia had no direct evidence. Irene's surprised response to Chiva's name could have another explanation: if Chiva had not molested Irene, Velia's linking Chiva and improper touching could have struck Irene as incongruous. And beyond Velia, there was no direct evidence linking Chiva to the offense. Circumstantially, without something more, her inferences amounted to a "nebulous allegation that perhaps [Chiva] was somehow involved." *See Wiley*, 74 S.W.3d at 407. Conjecture greatly attenuated the probative value of Velia's testimony. *See Gonzalez*, 544 S.W.3d at 372.

6

Why Ruiz wanted the evidence is straightforward: to create reasonable doubt about the perpetrator's identity and to explain Irene's knowledge of sexual matters inappropriate for her age. But Ruiz's need had to be weighed against other factors:

- Because the rational evidentiary inferences were so suspect, the evidence tempted jurors to fill in the gaps with their emotions and prejudices. *See id.*; *Wiley*, 74 S.W.3d at 407.

- And given that the allegation lacked other evidentiary support, any weight that the jury gave it would likely be undue—that is, weight not attributable to its own strength. *See Gonzalez*, 544 S.W.3d at 372.

- Further, the testimony would not have necessarily exculpated Ruiz—assuming that Chiva had abused Irene, that did not mean that Ruiz had not.

- Misidentification meshed poorly with the other facts: Ruiz was Irene's brother-in-law, and Chiva was a family friend, so neither Ruiz nor Chiva was a stranger to Irene. The case turned on whether Irene had lied about Ruiz, not on whether Irene had inexplicably confused Ruiz for Chiva. Thus, the testimony could confuse or distract the jurors from the main issue—whether Ruiz had molested Irene. *See id.*

- Although Velia's testimony, by itself, might not have prolonged the trial unnecessarily, her testimony would have invited rebuttal evidence. Expanding the trial's factual parameters based on circumstantial guesswork that would likely be rebutted with other circumstantial suppositions—regarding a possible offense that not even the complainant had alleged—would unnecessarily prolong the trial. *See id.*

We hold that the trial court's Rule 403 ruling was not outside the zone of reasonable disagreement.

We overrule Ruiz's issue.

## Conclusion

Having overruled Ruiz's issue, we affirm the trial court's judgment.

7

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  March 12, 2020