

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

## No. 02-19-00238-CR

———————————————

MAURICE RANIER BROWN, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1536593D

Before Sudderth, C.J.; Gabriel and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. Introduction

A jury found Appellant Maurice Ranier Brown guilty of aggravated sexual assault of a child as charged in the indictment and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for 35 years. The trial court sentenced Brown accordingly.

On appeal, Brown raises two points:

1. The trial court abused its discretion by allowing expert testimony from a nurse not certified to perform as a sexual assault nurse examiner (SANE).

2. The trial court abused its discretion by admitting hearsay testimony from a nurse not certified to perform as a SANE.

We hold that the trial court did not abuse its discretion in either instance, overrule Brown's two points, and affirm the trial court's judgment.

## II. Background

Both of Brown's points focus on the testimony of the State's expert witness, Nurse Pamela Simmons. We limit our factual discussion to the evidence relevant to Brown's two points.

### A. Hearing

Outside the jury's presence, Nurse Simmons testified that she had received her associate's nursing degree in 2008 and her master's degree in nursing in 2013. Her 11-year nursing career at Cook Children's Medical Center involved emergency and urgent care services and included working as a nursing manager in those areas.

Beginning in September or October 2017, Nurse Simmons began conducting sexual-assault examinations as part of her training to become certified as a SANE. When asked to describe a SANE certification, Nurse Simmons responded,

> A SANE certification is an advanced certification in addition to a nursing degree and experience that one achieves after a specific number of hours of didactic training in forensic nursing and a specified number of exams. You do proctored exams and submit those exams to the certification agency, which, in this case, is the office of the attorney general, and they sign off on whether or not to certify you.

Nurse Simmons also clarified that having a SANE certification was not a prerequisite to performing a sexual-assault examination on a child; as a registered nurse, she could "examine the children" and "collect evidence" without the certification—the certification just provided "proof of [her] expertise in the field."

By December 20, 2017—the date that she conducted a sexual-assault examination on 11-year-old Lilly[1]—Nurse Simmons had completed her SANE training, which included thirty sexual-assault examinations, but she had not yet obtained her certification. According to Nurse Simmons, she received her SANE certification approximately one month later, in January 2018.

By the time of trial in June 2019, Nurse Simmons had been a member of Cook Children's Medical Center's child-advocacy-resources-and-evaluation team (CARE team) for almost two years. During the intervening period, she had received ongoing

---

[1]To protect the anonymity of the victim, we use a pseudonym. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982); *cf.* Tex. R. App. P. 9.10(a)(3), (b) (requiring the redaction from filings with the court of the birth date, home address, and name of a person who was a minor at the time of the offense).

training and education, performed more than 400 sexual-assault examinations, and provided educational presentations on how to recognize and prevent child abuse.

Brown objected to Nurse Simmons's testifying as an expert because when Nurse Simmons examined Lilly, Nurse Simmons had not yet received her certification and was not otherwise qualified as an expert. The trial court overruled Brown's objection.

## B. Trial

Nurse Simmons testified before the jury that, as part of a sexual-assault examination, she obtains a medical history—that is, she asks the child to tell her what had happened. She explained that she does this because she "need[s] to know basically what to look at and what to do for them, how to treat them." According to Nurse Simmons, getting the patient's medical history is a widely accepted practice in the medical community.

Nurse Simmons testified that, consistent with that practice, Lilly had given her a medical history. But when the State asked Nurse Simmons what Lilly had told her, Brown raised a hearsay objection. After the trial court overruled Brown's objection, Nurse Simmons related what Lilly had said:

> I was in my room and I was watching TV and he came in[;] then he shut the door. He took off my pants and his pants, and he said, ["]Don't tell anybody.["] He put me on the bed, and he put his private in my private. And then after that, he left.

Lilly identified Brown by name as the perpetrator.

4

Although Lilly's physical examination revealed no abnormalities or injuries, Nurse Simmons described the absence of any physical abnormalities or injuries as "very normal." As she explained, "[P]ediatric sexual abuse tends to be far less violent than adult assaults, and it's rare to have an injury . . . in a pediatric case." Because Lilly's hymen had been estrogenized, Nurse Simmons added that she would not have expected to see any injury. She continued, "[The penetration could] be painful without causing a laceration, absolutely."

As a member of the CARE team, Nurse Simmons said that her focus was on "just taking care of kids, making sure their bodies are healthy and safe." And, as part of the examination, Nurse Simmons would check for sexually transmitted infections. After Lilly's exam, Nurse Simmons gave her three antibiotics, a prophylactic against pregnancy, and anti-nausea medication to prevent nausea from the "huge amount of antibiotics" that had been administered to her.

When questioned about her lack of a SANE certification when examining Lilly, Nurse Simmons reiterated that a SANE certification was not necessary to perform a sexual-assault examination. In fact, she testified, any registered nurse could perform one.

### III. Expert-Witness Testimony

In Brown's first point, he does not dispute that Nurse Simmons was an expert at the time of trial. Rather, he disputes whether she was an expert when she

performed Lilly's sexual-assault examination—because, as he correctly notes, at that time, Nurse Simmons had not yet received her SANE certification.

## A. Standard of Review

Appellate courts review a trial court's rulings on the admission of evidence, including expert testimony, for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id.*

## B. Legal Principles

An expert witness may offer an opinion if the witness is qualified to do so by knowledge, skill, experience, training, or education and if scientific, technical, or other specialized knowledge will help the factfinder to understand the evidence or determine a fact in issue. Tex. R. Evid. 702; *Rhomer*, 569 S.W.3d at 669. Before the trial court can admit expert testimony, three requirements must be met:

- the witness's knowledge, skill, experience, training, or education must qualify the witness as an expert;

- the subject matter must be an appropriate one for expert testimony; and

- the expert testimony must assist the factfinder in deciding the case.

*Rhomer*, 569 S.W.3d at 669. Courts commonly refer to these conditions as (1) qualification, (2) reliability, and (3) relevance. *Id.*

6

As one of our sister courts has explained, with regard to qualifications, there is no litmus test, no particular license or degree that an expert must possess to qualify. *Gregory v. State*, 56 S.W.3d 164, 179–80 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) ("A medical license or degree is not the litmus test for qualification as an expert witness."). Instead, the determination of whether an expert witness is qualified is based on the witness's knowledge, skill, experience, training, and education regarding the specific issue before the trial court. *Id.*

## C. Discussion

The question presented in Brown's first point is whether Nurse Simmons was not qualified to testify as an expert witness at trial because she had not yet received her SANE certification when she performed Lilly's sexual-assault examination. We note at the outset that Brown's argument conflates two distinct concepts: whether Nurse Simmons was qualified to perform the sexual-assault examination and whether she was qualified to testify as an expert at trial. Because the answer to the former inquiry has no bearing on the answer to the latter, we will separate the two.

First, on December 20, 2017, was Nurse Simmons qualified to perform Lilly's sexual-assault examination? Nurse Simmons testified that any registered nurse was qualified to perform such an examination, and Brown does not challenge this on appeal. Thus, we answer this question in the affirmative. Nurse Simmons was qualified to perform Lilly's sexual-assault examination.

The second question is whether Nurse Simmons was qualified to testify as an expert witness on June 12, 2019, the day she testified at trial. The evidence showed that by June 12, Nurse Simmons had been certified to perform as a SANE for 17 months. She had performed more than 400 sexual assault examinations during her nursing career. And she had not only received ongoing education and training but also had provided education and training on recognizing and preventing child abuse. The question of whether an expert is qualified rests largely within the trial court's discretion. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000) (citing *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995)). Whether Nurse Simmons was called to testify about the examination that she had performed or whether she had been called to testify about an examination that another nurse had performed, the evidence showed that by the time of trial, Nurse Simmons was equipped with sufficient knowledge, skill, experience, training, and education to give expert testimony under Rule 702 regarding the sexual-assault examination in this case. Her qualifications to testify at trial in 2019 did not hinge on whether she was qualified to perform the sexual-assault examination in 2017. Therefore, we hold that the trial court did not abuse its discretion by finding that Nurse Simmons was qualified to testify as an expert under Rule 702. We overrule Brown's first point.

## IV. Hearsay

In his second point, Brown argues that because Nurse Simmons had not yet received her SANE certification when she examined Lilly, Lilly's statements to Nurse

Simmons did not qualify under the medical-diagnosis-or-treatment exception to the hearsay rule. *See* Tex. R. Evid. 803(4)(a). We disagree.

As discussed under point one, even without the SANE certification, Nurse Simmons was a registered nurse and was qualified to perform sexual-assault examinations. She testified that as a health-care professional asking for a medical history, her job was to determine what she needed to "look at," what she needed to "do for [the child]," and "how to treat [the child]." Thus, Lilly's statements to Nurse Simmons were made for medical diagnosis or treatment. And, based on the medical history that Lilly gave Nurse Simmons, Nurse Simmons knew where to look for possible injuries and knew that she had to treat Lilly for sexually transmitted infections and for a possible pregnancy. Because Nurse Simmons's testimony was based on statements that Lilly had made to her for medical diagnosis or treatment, Lilly's statements to Nurse Simmons were admissible as an exception to the hearsay rule. *See id.*; *Wells v. State*, 558 S.W.3d 661, 667–68 (Tex. App.—Fort Worth 2017, pet. ref'd). We hold that the trial court did not abuse its discretion by overruling Brown's hearsay objection. *See Wells*, 558 S.W.3d at 667–68. We overrule Brown's second point.

## V. Conclusion

Having overruled both of Brown's points, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 25, 2020

10