

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00109-CR

———————————————

ROBERT KENNETH FOSTER, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CR18-0836

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Robert Kenneth Foster appeals his conviction for continuous sexual abuse of a child under the age of fourteen. *See* Tex. Penal Code Ann. § 21.02(b). On appeal, Foster argues in a single issue that the trial court abused its discretion by admitting the victim's sister's testimony as extraneous offense evidence pursuant to Article 38.37 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. Specifically, Foster asserts that the trial court should not have admitted this extraneous offense evidence because its probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. We will affirm.

## I. BACKGROUND

Foster was married to Susan from 2008 to 2012, and together they had two children: Jenna and Charlie.[1] Susan also had a daughter, Jane, from a previous relationship. Because Jane was only two years old when Susan married Foster and because Jane did not have a relationship with her biological father, she considered Foster to be her father.

After Foster divorced Susan, he continued to have a relationship with all three children, including Jane. Although Susan had primary custody, the children would

---

[1]We use aliases to refer to the victim and her family members—other than the Appellant. *See* Tex. R. App. P. 9.10(a)(3).

stay at Foster's mobile home in Parker County, Texas, on the first, third, and fifth weekends of every month.

Jane, who was sixteen years old at the time of trial, testified that Foster had regularly sexually abused her during her weekend visits to his home and that this abuse had started when she was nine years old and had ended when she was thirteen years old. Specifically, Jane testified that Foster had abused her by touching her breast with his hands and mouth, both over and under her clothes; touching her vagina with his hands, mouth, penis, and fingers; making her touch his penis with her hands and mouth; and putting his penis in her vagina. Jane further testified that Foster had shown her pornographic videos and had given her alcohol.

According to Jane, the sexual abuse eventually escalated to include the use of a blindfold and a whip. Jane testified that when she was between the ages of ten and twelve, she walked into Foster's room after getting out of the shower and saw a blindfold and a whip on the bed. She was familiar with these items because Foster had shown her the movie *Fifty Shades of Grey* and had provided her the books on which the movie was based. Jane testified that Foster put the blindfold on her and hit her with the whip, injuring her back and causing her to bleed. While there was no intercourse after the first blindfolding and whipping incident, Jane indicated that such incidents happened "more than five times" and that intercourse would typically follow. When Jane was thirteen, she stopped going to Foster's house, so the abuse ended.

3

In July 2018—shortly after Jane had stopped visiting Foster on weekends—she called her mother Susan from her grandparents' house to ask her to bring her some clothes.[2] While looking through a drawer for clothes, Susan found a pill bottle labeled "Horny Goat Weed." Susan confronted Jane at her grandparents' house and asked her about the pills. After Jane told Susan that Foster had given her the pills, Susan asked Jane if Foster had raped her or hurt her. Unable to "get the words out," Jane typed "yes" into her mother's phone.

After Jane's outcry, Susan reported the abuse to authorities, and Foster was indicted in September 2018.

In July 2019, Jenna made an outcry that Foster had also sexually abused her. As a result, the State gave Foster notice that it planned to present Jenna's testimony at trial as extraneous offense evidence under Article 38.37, Section 2 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. The trial court held a pretrial hearing to determine whether evidence of Jenna's allegations would be admissible under Article 38.37. *See id.* art. 38.37, § 2-a. During the hearing, Jenna—who was thirteen at the time of trial—testified that Foster had begun sexually abusing her when she was eight years old. She described multiple instances of sexual assault,

---

[2]Jane was staying at her grandparents' house because she had held a knife to her stepbrother's throat a few days earlier and had been arrested for aggravated assault with a deadly weapon. According to Jane, she had been trying to protect her brother Charlie because her stepbrother was choking him. When the stepbrother's mother found out about the incident, she pressed charges against Jane. At the time of trial, Jane had not been prosecuted, and she assumed that the charges had been dropped.

including oral sex, penetration of her vagina on multiple occasions, penetration of her anus, and multiple instances of Foster touching her genitalia. Jenna also testified that Foster was extremely violent and had threatened to kill her if she told anyone about the abuse. The trial court ruled that Jenna's testimony was admissible and allowed her to testify about her abuse allegations at trial.

Following a jury trial, Foster was convicted of continuous sexual abuse of Jane and sentenced to life in prison. This appeal followed.

## II. DISCUSSION

In a single issue, Foster argues that the trial court abused its discretion by admitting Jenna's testimony about how Foster had allegedly abused her as extraneous offense evidence pursuant to Article 38.37. Specifically, Foster asserts that the trial court abused its discretion by admitting this extraneous offense evidence because its probative value was substantially outweighed by a danger of unfair prejudice. *See* Tex. R. Evid. 403. Foster's argument is both unpreserved and meritless.

### A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within

5

which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

## B.  ADMISSIBILITY OF EXTRANEOUS OFFENSE EVIDENCE UNDER ARTICLE 38.37

Rule 404(b)(1) generally disallows evidence of crimes, wrongs, or other acts solely to prove a person's character to show that the person acted in conformity with that character on a particular occasion. Tex. R. Evid. 404(b)(1). Such extraneous offense evidence is statutorily admissible, however, in continuous-abuse-of-a-young-child and indecency-with-a-child cases. *See* Tex. Code Crim. Proc. Ann. art. 38.37. In such cases, "[n]otwithstanding Rules 404 and 405," evidence that a defendant has committed a separate sexual offense against a different child may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* § 2(b). But before such evidence may be introduced, the trial judge must conduct a hearing outside the jury's presence to determine whether the evidence is adequate to support a jury finding that the defendant committed the separate offense beyond a reasonable doubt. *Id.* § 2-a.

## C. RULE 403

Even if extraneous offense evidence is relevant and admissible under Article 38.37, that evidence can be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the evidence's probative value. *See Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Martin v. State*, 176 S.W.3d 887, 895 (Tex. App.—Fort Worth 2005, no pet.); *see also* Tex. R. Evid. 403. A trial court must conduct a Rule 403 balancing test upon a proper objection or request. *See Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication)). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403— including unfair prejudice. *James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760.

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at

389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

### D. FOSTER'S SOLE APPELLATE ISSUE IS BOTH UNPRESERVED AND MERITLESS

To preserve error in the admission of evidence, a party generally must object each time the objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.). Here, Foster did not object when the State called Jenna to testify at trial, nor did he object to any of her trial testimony on Rule 403 grounds. Although Foster argued at the pretrial hearing that Jenna should not be allowed to testify because "there[ was] no chance" that a jury could believe her abuse allegations beyond a reasonable doubt, *see* Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a(1), and because her testimony "would

8

be . . . overwhelmingly prejudicial and [would] have limited probative value," *see* Tex. R. Evid. 403,[3] he did not object to the trial court's ruling that Jenna's testimony was admissible, nor did he ask for—much less obtain—a running objection on Rule 403 grounds.[4] Because Foster failed to raise a Rule 403 objection to Jenna's testimony at trial, he failed to preserve this issue for our review.[5] *See* Tex. R. App. P. 33.1(a); *see also*

---

[3]Foster also filed a "Motion in Limine Regarding Extraneous Bad Acts" and a separate "Motion in Limine and Objections to Admission of Extraneous Offenses." However, motions in limine do not preserve error. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) ("A motion in limine . . . is a preliminary matter and normally preserves nothing for appellate review. For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial." (citation and emphasis omitted)); *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007). Moreover, Foster's written objections—which were filed more than two years before the State gave notice that it planned to present Jenna's testimony at trial, *see* Tex. Code Crim. Proc. Ann. Art. 38.37, § 2—were directed at extraneous offenses involving "acts of sexual contact *between the Defendant and* [*Jane*] other than the acts alleged in the indictment." [Emphasis added.] They did not explicitly address extraneous offense evidence involving any other victims, including Jenna. And even if they had, because the trial court never ruled on them, Foster would nevertheless have been required to renew his objection when the evidence was offered at trial to preserve his complaint for appellate review. *See, e.g.*, *Gary v. State*, No. 02-21-00171-CR, 2023 WL 2805477, at *5 (Tex. App.—Fort Worth Apr. 6, 2023, no pet.) (mem. op., not designated for publication) (citing Tex. R. Evid. 103(b)).

[4]A defendant's obtaining a running objection is an exception to the contemporaneous-objection rule. *Geuder*, 115 S.W.3d at 13; *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991).

[5]Neither party addressed this preservation issue in their appellate briefing. However, because "[p]reservation of error is a systemic requirement . . . [which] a court of appeals should review . . . on its own motion," we must nevertheless determine whether error was preserved before considering the merits of Foster's argument. *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009); *see also Landaverde v. State*, Nos. 05-19-00175-CR, 05-19-00176-CR, 2020 WL 2897108, at *10

*Gary*, 2023 WL 2805477, at *5–7 (holding that appellant's written objection—which was never ruled on—and motion in limine did not preserve his appellate argument that extraneous offense evidence was not admissible under Rule 403 because he did not object when the evidence was offered at trial or obtain a running objection on Rule 403 grounds); *Gauna v. State*, 534 S.W.3d 7, 10–11 (Tex. App.—San Antonio 2017, no pet.) (holding that Rule 403 objection during Article 38.37 hearing was not sufficient to preserve error and that defendant was required to renew his objection when the witness testified or obtain a running objection). We therefore overrule Foster's sole appellate issue on that basis.

We would reach the same conclusion, however, even if Foster had preserved the error. Applying the *Gigliobianco* factors, *see* 210 S.W.3d at 641–42, we cannot say that the trial court abused its discretion by admitting Jenna's testimony.

First, as Foster concedes, because Jenna's allegations are very similar to Jane's in terms of both the nature and the timeframe of the abuse, the inherent probative force of Jenna's testimony is very strong. *See Hill v. State*, No. 11-13-00069-CR, 2015 WL 252316, at *7 (Tex. App.—Eastland Jan. 15, 2015, pet. ref'd) (mem. op., not designated for publication) ("As important measures of probative force, we consider the closeness in time, the presence of similarities between the charged and the

---

(Tex. App.—Dallas June 3, 2020, pet. ref'd) (mem. op., not designated for publication) (determining that appellant had not preserved error even though the State had not disputed whether the issue had been preserved).

extraneous offense, and the strength of the evidence to prove the extraneous offense." (first citing *Montgomery*, 810 S.W.2d at 390; and then citing *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985)); *cf. Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (recognizing that "[b]ecause . . . evidence of prior sexual abuse of children '[is] especially probative of [a defendant's] propensity to sexually assault children,' the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children" (quoting *Belcher*, 474 S.W.3d at 848)). Second, contrary to Foster's assertions, the State had a strong need for the evidence. While the State presented other evidence,[6] the only direct evidence of the alleged offense was Jane's testimony. As a result, the State's entire case hinged on Jane's credibility. The defense's theory was that Jane was lying and had fabricated the abuse allegations in an attempt to get out of trouble after having been arrested for assaulting her stepbrother. Thus, Jenna's testimony alleging abuse similar to that described by Jane served a crucial role in bolstering Jane's

---

[6]Foster asserts that the State did not need Jenna's testimony because Foster (1) did not testify to dispute Jane's allegations, (2) had admitted to Susan in a recorded phone call that he might have "done something" to Jane while he was drunk because he mistook her for Susan, (3) had admitted to having the "Horny Goat Weed" pills (though not to giving them to Jane), and (4) had texted Jane that he was sorry. But even though Foster did not testify, the defense repeatedly argued that Jane was lying and had fabricated the abuse allegations to get out of trouble, thereby placing Jane's credibility squarely at issue. Further, Foster's admissions that he might have "done something" to Jane while he was drunk and that he had possessed the "Horny Goat Weed" pills and his apology to Jane did not constitute confessions or establish any specific incidents of abuse committed against Jane. Thus, despite this other evidence, the State still had a strong need for Jenna's testimony to bolster Jane's credibility.

11

credibility and rebutting the defense's theory. *Cf. Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *5 (Tex. App.—Fort Worth Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (holding that the State had a "strong need" for extraneous offense evidence in domestic assault case because it rebutted the defense's theory "that the abuse was mutual and just part of the couple's sexual foreplay or their usual, 'toxic' dynamic"). Given Jenna's testimony's strong inherent probative force and the State's need for this evidence, we conclude that the extraneous offense evidence's probative value is very high. *See Gigliobianco*, 210 S.W.3d at 641–42.

Foster has failed to show that the extraneous offense evidence's high probative value was substantially outweighed by any of the dangers listed in Rule 403. *See James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760. First—while the evidence of Jenna's abuse allegations is undeniably prejudicial—because the abuse alleged by Jenna is similar in nature and seriousness to that alleged by Jane, such evidence is not unfairly prejudicial.[7] *See Norwood v. State*, No. 03-13-00230-CR, 2014

---

[7]Foster asserts that Jenna's abuse allegations are more heinous than Jane's because (1) Jenna was Foster's biological daughter, (2) Jenna was younger than Jane was when Foster first began to abuse her, and (3) Jenna's allegations included much more violence and physical abuse than Jane's. We disagree. Although Jane was not Foster's biological daughter, she testified that she viewed him as her father and was not aware that he was not her biological father when her mother divorced him and she began staying with him on weekends. Jane testified that Foster began abusing her when she was nine; Jenna testified that Foster began abusing her when she was eight or nine. This age difference, if any, is not significant. Further, while Jenna described Foster as violent and threatening, Jane—unlike Jenna—alleged that Foster had

WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) ("When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice."); *see also Gigliobianco*, 210 S.W.3d at 641 (clarifying that unfair prejudice "refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one"). Because the evidence was not scientific or technical in nature, there was little risk of jury confusion. *See Gigliobianco*, 210 S.W.3d at 641 (providing scientific evidence as an example of the type of evidence that "might mislead a jury that is not properly equipped to judge" its "probative force"). Further, while Jenna's testimony comprised a significant portion of the trial, the presentation of the extraneous offense evidence was not needlessly cumulative, nor did it cause undue delay. Thus, this factor weighs only slightly, if at all, against admission. *Cf. Gaulding*, 2022 WL 17986026, at *7. Moreover, although the State's attorney referenced Jenna's allegations repeatedly during closing arguments, she also clarified that "[t]he case that you're here on today is the case involving [Jane] . . . [F]or purposes of what your decision is today, you are deciding whether . . . Foster sexually abused [Jane], okay?" And the jury charge clearly instructed the jury that it could not consider any extraneous offense evidence for any purposes other than "its bearing on

blindfolded and whipped her during many of their sexual encounters. Because of the inclusion of these BDSM elements, Jane's abuse allegations are at least as heinous and sensational as Jenna's—and arguably more so.

13

the state of mind of [Foster] and [Jane]"; "its bearing on the . . . relationship between [Foster] and [Jane]"; or "its bearing on any relevant matters, including the character of [Foster] and acts performed in conformity [therewith]." *See Landaverde*, 2020 WL 2897108, at *7–8 (holding that trial court's limiting instructions lessened extraneous offense evidence's tendency to suggest a decision on an improper basis, to confuse or distract the jury from the main issues, or "to leave the jury ill-equipped to evaluate its probative force"). Thus, we cannot conclude that any tendency of Jenna's testimony to confuse or distract the jury from the main issues in the case substantially outweighed its high probative value, *see Gigliobianco*, 210 S.W.3d at 642, much less that the trial court's decision to admit Jenna's testimony was outside the zone of reasonable disagreement, *see Zuliani*, 97 S.W.3d at 595.

In sum, Foster's Rule 403 objection to Jenna's testimony is both unpreserved and meritless. Accordingly, we overrule Foster's sole issue.

## III. CONCLUSION

Having overruled Foster's sole issue, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 27, 2023

14