

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-23-00131-CR

_____

**SCOTTIE HEATH GIBSON,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. DC-F202000027

_____

## MEMORANDUM  OPINION

_____

Scottie Heath Gibson appeals his convictions for one count of continuous sexual abuse of a young child, seven counts of sexual assault of a child, and two counts of indecency with a child. A jury found him guilty and assessed punishment at confinement in the Texas Department of Criminal Justice—Institutional Division for forty years for count one, thirty-five years each for counts two and three, and ten years each for counts four through ten. The trial court ordered that his sentences for counts one, two, and three

shall run consecutively, and the sentences for the remainder of the counts shall run concurrently will all counts. In thirteen issues, Gibson contends the trial court violated his constitutional rights to a speedy trial, to be free of unreasonable searches and seizures, and to confront witnesses, the trial court erred in admitting certain evidence, and the evidence is legally insufficient to support the convictions of any of the ten counts. We affirm.

## Speedy Trial

In his first issue, Gibson contends the trial court violated his constitutional right to a speedy trial. He complains of a thirty-seven-month delay between his arrest and trial. He claims he asserted his right to a speedy trial multiple times, and all of the delays were caused by the State or an overcrowded docket, or were unexplained, resulting in prejudice and requiring dismissal of the prosecution.

APPLICABLE LAW

An accused is guaranteed the right to a speedy trial under the Sixth Amendment of the United States Constitution, Article 1, Section 10 of the Texas Constitution, and article 1.05 of the Texas Code of Criminal Procedure. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05. In determining whether the accused has been denied the right to a speedy trial, the court must weigh and balance four factors: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Dragoo v. State*, 96 S.W.3d 308, 313

(Tex. Crim. App. 2003). This balancing test requires weighing case-by-case the conduct of both the prosecution and the accused. *Barker*, 407 U.S. at 530.

In reviewing a trial court's decision on a speedy trial claim, the appellate court gives almost total deference to the trial court's findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings. *Balderas v. State*, 517 S.W.3d 756, 767-68 (Tex. Crim. App. 2016). But the balancing test as a whole is a purely legal question that we review de novo. *Id*. at 768.

Length of Delay

In general, courts deem delay approaching one year to be "unreasonable enough to trigger the *Barker* enquiry." *Id*. The extent to which the delay exceeded the minimum needed to trigger judicial examination factors into our assessment of the first *Barker* factor. *Id*. In this case, Gibson was arrested in December 2019 and tried in January 2023, an interval of about three years. Because this delay stretched far beyond the minimum needed to trigger the inquiry, the first *Barker* factor weighs heavily in favor of finding a violation of Gibson's speedy-trial right. *See id*.

Reason for the Delay

In assessing the reason for the delay, different weights should be assigned to different reasons for the delay. *Id*. Some reasons are valid and serve to justify an appropriate delay. *Id*. Deliberate delay intended to hamper the defense weighs heavily against the State, while more neutral reasons, such as negligence or overcrowded courts,

weigh less heavily.  *Id*.  Additionally, we consider whether the government or the criminal defendant is more to blame for the delay.  *Id*.

Jury trials were either banned or restricted from spring 2020 through early 2021. *See e.g., Seventeenth Emergency Order Regarding the Covid-19 State of Disaster*, 609 S.W.3d 119, 120 (Tex. 2020); *Thirty-Third Emergency Order Regarding the Covid-19 State of Disaster*, 629 S.W.3d 179, 179-80 (Tex. 2021); s*ee also Covid-19 Operating Plan for the Johnson County Judiciary Guinn Justice Center and Justice of the Peace Offices*, May 20, 2020 (prohibiting jury trials in Johnson County).  At the October 6, 2020 hearing on counsel's motion to withdraw, counsel stated there have been some COVID-related delays.  Delay caused by the onset of the pandemic cannot be attributed as fault to the State.  *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.).  At the November 24, 2020 pretrial hearing, defense counsel asked for a pass until January 14, 2021 because she did not think anything could be resolved at that hearing.  Due to the fact this overlapped with the Covid delay time period, we decline to weigh it against Gibson.

Additionally, we should not hold the first few months after the arrest against the State because the State is allowed a reasonable period to prepare its case.  *See Shaw v. State*, 117 S.W.3d 883, 889-90 (Tex. Crim. App. 2003); *Wade v. State*, No. 02-21-000125-CR, 2023 Tex. App. LEXIS 1716, at *13 (Tex. App.—Fort Worth March 16, 2023, pet. ref'd) (mem. op., not designated for publication) (not holding first three months against State); *State v. Echols*, No. 11-19-00209-CR, 2021 Tex. App. LEXIS 4219, at *10 (Tex. App.—

Eastland May 28, 2021, pet. ref'd) (mem. op., not designated for publication) (seven months attributable to State's preparation not held against the State).

Gibson's actions contributed to the delay. On December 12, 2019, the trial court appointed Gibson's first attorney. On May 24, 2022, the trial court appointed Gibson's seventh attorney. One attorney withdrew due to a conflict of interest. However, in motions to withdraw, six of the attorneys cited "fundamental communication" issues, personality conflicts, Gibson's combativeness, and Gibson's desire to engage in hybrid representation and inability to take legal advice, barring effective representation. The trial court could infer that Gibson contributed to the delay because of his inability to effectively communicate with appointed counsel. *See Balderas*, 517 S.W.3d at 767-68.

On September 10, 2021, Gibson filed a petition for writ of mandamus in this Court. At the September 16, 2021 pretrial hearing, the case was reset to January 13, 2022 because the petition remained pending. *See In re Gibson*, No. 10-21-00228-CR, 2021 Tex. App. LEXIS 9192 (Tex. App.—Waco November 10, 2021, orig. proceeding) (mem. op.). Because Gibson's petition delayed the trial, this delay does not count in support of his speedy trial claim.[1] *See United States v. Loud Hawk*, 474 U.S. 302, 316 (1986).

---

[1] Gibson appealed the denial of his pretrial application for writ of habeas corpus to this Court which affirmed it. *See Ex parte Gibson*, No. 10-21-00273-CR, 2022 Tex. App. Lexis 1113 (Tex. App.—Waco February 16, 2022, pet. ref'd) (mem. op., not designated for publication). The record does not indicate that appeal contributed to the delay.

Defense counsel did not attend the January 20, 2022 pretrial hearing so the case was reset. This delay can be attributed to Gibson. *See Balderas*, 517 S.W.3d at 768. The next pretrial hearing was May 24, 2022 at which time the court allowed attorney number six to withdraw, appointed attorney number seven, and set a jury trial date for September 19, 2022.

On September 12, 2022, the State filed a motion for continuance to complete DNA testing. The estimated time for completion of the testing was the end of October 2022. At the September 15, 2022 pretrial hearing, defense counsel stated he had no objection to the State's motion for a continuance based on the need for DNA testing. The court reset the trial date to October 31, 2022. The delay caused by an agreed reset should not be counted in calculating the time period between arrest and trial. *See Orellana v. State*, 706 S.W.2d 660, 661-62 (Tex. Crim. App. 1986) (per curiam).

There is no explanation in the record for the delay from October 31, 2022 and December 20, 2022. In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. *Dragoo*, 96 S.W.3d at 314.

At the December 20, 2022 status conference, the court reset the trial date to January 23, 2023, the next trial setting. The record before us indicates that the delays in trying this case can be, in large part, attributable to Covid restrictions and Gibson's actions.

## Assertion of the Right

Beginning at least in September 2020 and continuing through November 2022, Gibson filed pro se motions asserting, among other things, his constitutional right to a speedy trial. However, as explained above, Gibson was represented by counsel at all times. A defendant is not entitled to hybrid representation and the trial court was not required to rule on the motions filed by Gibson. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007); *Floyd v. State,* 959 S.W.2d 706, 710 (Tex. App.--Fort Worth 1998, no pet.); *see also Wade*, 2023 Tex. App. LEXIS 1716, at *19 & n.15. Gibson's pro se motions cannot be considered as an assertion of his speedy trial right. *See Torres v. State*, No. 04-16-00622-CR, 2017 Tex. App. LEXIS 11053, at *13 (Tex. App.—San Antonio, November 29, 2017, no pet.) (mem. op., not designated for publication).

## Prejudice

In determining prejudice, we consider the delay's effect on three categories of interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Dragoo*, 96 S.W.3d at 315. A defendant has the burden to make some showing of prejudice, but a showing of actual prejudice is not required. *Balderas*, 517 S.W.3d at 772. If the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the prejudice did not exceed that which occurs from the ordinary and inevitable delay. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). The

possibility of prejudice is not sufficient to support a defendant's position that his speedy trial rights were violated. *Loud Hawk*, 474 U.S. at 315.

Gibson has not shown the effect the incarceration had on him. *See Munoz*, 991 S.W.2d at 828-29. There is no showing that his pre-trial incarceration was oppressive or that his defense was impaired. Although Gibson mentioned in his pro se motions that he had experienced anxiety, those motions are not evidence, and the trial court rightly ignored them. *See Newman v. State*, 331 S.W.3d 447, 449 (Tex. Crim. App. 2011). Gibson failed to show any prejudice beyond that which usually arises from pretrial incarceration or from being accused of a crime. We therefore conclude that any prejudice that he suffered was minimal.

Balancing

Although the length of delay favors Gibson's position, the reasons for the delay are largely neutral or attributable to Gibson. There was no evidence of bad faith on the part of the State or that the State engaged in purposeful dilatory tactics. Moreover, Gibson's pro se motions cannot be considered an assertion of his speedy trial rights, and he has shown little or no prejudice resulting from the delay. Balancing these factors, we conclude that Gibson was not denied his right to a speedy trial. *See Webb v. State*, 36 S.W.3d 164, 176 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g, en banc). We overrule Gibson's first issue.

**Sexual Assault Examination Evidence**

In his twelfth issue, Gibson asserts the trial court erred in allowing Dr. Jayne Coffman to testify as to the Sexual Assault Nurse Examination (SANE) report. Because Coffman was not present at the complainant's interview, he contends his constitutional right to confront witnesses was violated. He also contends the trial court erred in admitting the report, claiming it is hearsay.

The Confrontation Clause dictates that an accused "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004). Accordingly, to implicate the Confrontation Clause, the challenged out-of-court statement must be made by a witness absent from trial and be testimonial in nature. *Id*. We review a constitutional ruling de novo. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

The person who made the statement is the declarant. TEX. R. EVID. 801(b). Here, the complainant was the declarant of the challenged statements. She testified at trial and was subject to cross-examination. Because Dr. Coffman was not the declarant of the statements in the SANE report, her testimony did not violate the Confrontation Clause. *See Wells v. State*, 558 S.W.3d 661, 667 (Tex. App.—Fort Worth 2017, pet. ref'd).

Gibson asserts that the SANE report was inadmissible hearsay. We review hearsay challenges under an abuse of discretion standard. *Wall*, 184 S.W.3d at 743.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Generally, the object of a sexual assault exam is to determine whether the child complainant has been sexually abused and whether further medical attention is needed. *Wells*, 558 S.W.3d at 668. Statements made for the purposes of medical diagnosis and treatment are admissible under an exception to the hearsay rule. TEX. R. EVID. 803(4). Therefore, this exception justified admission of the SANE report. *See Wells*, 558 S.W.3d at 668.

Because the trial court did not err in allowing Coffman's testimony or in admitting the SANE report, we overrule Gibson's twelfth issue.

### Arrest Warrant

In his thirteenth issue, Gibson asserts that his constitutional right to be free of unreasonable searches and seizures was violated by his warrantless arrest.[2] He contends he is entitled to be acquitted of all charges.

Officer Michael Ridling was involved in investigating the claims against Gibson. He spoke to the woman to whom the complainant made an outcry. The following day, he encountered Gibson outside of Gibson's home. Gibson was loading items into his truck and appeared to be about to leave. Believing that Gibson might flee, the officer

---

[2] An arrest warrant was procured and is included in the clerk's record in this case. Additionally, the record reflects that Gibson was provided a copy of the arrest warrant at a pretrial hearing held July 15, 2021.

detained Gibson while a detective obtained an arrest warrant. Gibson was then arrested pursuant to the arrest warrant.

Assuming Gibson was arrested from the point Ridling detained Gibson, it was a lawful detention. Ridling was aware of the allegations against Gibson, some of which were felonies, and he believed Gibson was about to escape. These facts satisfy the requirements for a warrantless arrest. *See* TEX. CODE CRIM. PROC. ANN. art. 14.04. We overrule Gibson's thirteenth issue.

### Sufficiency of the Evidence

In issues two through eleven, Gibson contends the State did not prove all of the elements of the offenses alleged in Counts 1 through 10. The gravamen of his argument is that the complainant, M.P., was not believable. He also contends a fatal variance exists between the dates the offenses alleged in Count 1 were alleged to have been committed and the dates proven at trial. Specifically as to Counts 9 and 10, Gibson asserts the evidence is insufficient to show that he engaged in sexual contact with the intent to arouse or gratify his sexual desires.

STANDARD OF REVIEW

In evaluating a challenge to sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Edward*

*v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021).  The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to the evidence.  *Id*.  Further, we defer to the jury's responsibility to fairly resolve conflicts in testimony and to draw reasonable inferences from basic facts to ultimate facts.  *Id*.

APPLICABLE LAW

A person commits the offense of continuous sexual abuse of a young child if:  (1) during a period that is thirty or more days in duration, the person commits two or more acts of sexual abuse; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age.  TEX. PENAL CODE ANN. § 21.02(b).  An act of sexual abuse is an act that violates one or more specified penal laws, including indecency with a child under Penal Code Section 21.11(a)(1) and sexual assault under Penal Code Section 22.011.  *Id*. § 21.02(c).

A person commits the offense of indecency with a child, who is younger than seventeen years of age, by engaging in sexual contact with the child or causing the child to engage in sexual contact.  *Id*. § 21.11(a).  Sexual contact includes touching of the anus, breast, or any part of the genitals of a child, if committed with the intent to arouse or gratify the sexual desire of any person.  *Id*. § 21.11(c).

A person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means or

causes the penetration of the mouth of the child by the sexual organ of the actor. *Id*. § 22.011(a)(2).

A person commits the offense of prohibited sexual conduct if the person engages in sexual intercourse with another person the actor knows to be the actor's current or former stepchild. *Id*. § 25.02(a)(2).

**Discussion**

M.P. was born in 2003. Her mother married Gibson when she was approximately nine years old. Even after her mother and Gibson divorced, M.P. lived with Gibson most of the time. The first instance of sexual abuse occurred when she was eight or nine and they lived in Joshua. He showed her pornography and placed a vibrator on her vagina. After that, the sexual abuse would happen on and off when no one else was in the house. He showed her pornography and touched her breasts, vagina, and "just kind of everywhere" under her clothes. She testified that he first tried to have sex with her when she was eight or nine and "eventually it did go in." She clarified that his penis and her vagina touched. He assaulted her five to ten times at the house in Joshua.

Later, when she was in fifth grade, at the age of eleven or twelve, which would have been 2014 or 2015, they moved to a house on Madison Street in Cleburne where the assaults became more frequent. She testified that, when she was twelve, Gibson explained to M.P.'s mother that he had taken her virginity because he thought M.P. should lose her virginity to someone she knows and trusts. By the time she was twelve,

"[i]t was happening frequently" and she "had gotten accustomed to it," so she had sex with him to maintain the peace. She testified that Gibson wanted her to sleep in his bed at night. On at least one occasion he woke her up by rubbing his fingers on her vagina and then had sex with her.

After they moved to the Madison Street house, sex toys were used more often. She explained that they used a variety of sex toys after intercourse and that Gibson inserted the sex toys in her vagina. She testified that they were used because Gibson wanted to make sure she "was pleasured." She explained that he seemed like he wanted to do it and he would try to talk her into having "female ejaculations." When she was twelve or thirteen, they had anal sex.

M.P. testified that when she was fourteen, in the summer of 2017, she became pregnant by Gibson, and he and her mother forced her to have an abortion. The sex with Gibson resumed about a month after the abortion. She described a time when she was fifteen when he penetrated her vagina, explaining that they had sex whenever he wanted it. They had sex vaginally about two or three times a week. They had sex anally less than five times, during which his penis touched her anus. Every now and then, starting before they moved to the house on Madison Street, Gibson placed his penis in her mouth.

M.P. explained that if Gibson wanted sex and he got sex, then he would be in a good mood. He treated her "pretty fairly" as long as he got what he wanted. He promised to buy her things and provide things for her, apparently in exchange for sex.

M.P. estimated that, prior to turning thirteen years old, Gibson had sex with her over fifty times. After she turned thirteen, he had sex with her "definitely over 75" times.

The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for continuous sexual abuse of a young child, sexual assault of a child, and indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07. M.P.'s testimony was sufficient to prove, beginning when she was under the age of fourteen, Gibson, her stepfather for a time, intentionally or knowingly penetrated her sexual organ with his sexual organ and sex toys, Gibson penetrated M.P.'s anus and mouth with his sex organ, and Gibson touched her genitals. *See* TEX. PENAL CODE ANN. §§ 21.02(b), 21.11, 22.011(a)(2).

Gibson contends the State did not prove the sexual abuse alleged in Count 1 took place between the dates alleged. Count 1 alleged that, during a period that was thirty or more days in duration, namely from on or about June 15, 2014 through on or about January 28, 2015, Gibson committed two or more acts of sexual abuse against the complainant. The "on or about" language in the indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period. *State v. West*, 632 S.W.3d 908, 913 (Tex. Crim. App. 2021). The record shows the sexual abuse occurred prior to presentment of the indictment. Further, there is no limitations period for continuous sexual abuse of a young child, the crime alleged in Count 1. *See* TEX. CODE

CRIM. PROC. ANN. art. 12.01(1)(D). Gibson's argument that the State failed to prove the dates of the offense of continuous sexual abuse of a young child has no merit.

Gibson asserts the evidence is insufficient to support his convictions for indecency with a child because it was not shown that he touched M.P.'s genitals with the intent to arouse or gratify his sexual desire as required by the statute. *See* TEX. PENAL CODE ANN. § 21.11. We disagree.

The requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks, and all surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). Gibson's contact with M.P.'s genitals can only be described as sexual in nature. *See Montgomery v. State*, 810 S.W.2d 372, 396 (Tex. Crim. App. 1991) (op. on reh'g) (finding sufficient evidence of intent because the vaginal contact described by complainants "can hardly be attributed to normal parental caretaking"). The jury heard testimony that, over the course of eight or nine years, Gibson repeatedly touched M.P.'s breasts and genitals, had sex with her over 125 times, impregnated her, and used sex toys on her. *See Ranson v. State*, 707 S.W.2d 96, 97 (Tex. Crim. App. 1986) (noting that evidence of common pattern of similar acts is admissible as tending to prove intent); *C.F. v. State*, 897 S.W.2d 464, 472 (Tex. App.—El Paso 1995, no pet.) (holding that appellant's repeat conduct gives rise to the conclusion that he acted with intent to arouse or gratify his sexual desire). Gibson did these things only when no one else was in the home. *See Montgomery*, 810 S.W.2d at

396 (evidence demonstrating consciousness of guilt leads to an inference that appellant harbored a specific intent to arouse and gratify his own sexual desire). Accordingly, the element of intent is supported by legally sufficient evidence. *See McKenzie*, 617 S.W.2d at 216.

Viewing the evidence in the light most favorable to the jury's verdict and deferring to the jury's responsibility to both weigh the evidence and draw reasonable inferences from it, we conclude that a rational trier of fact could have found Gibson guilty of continuous sexual abuse of a young child, sexual assault of a child, and indecency with a child beyond a reasonable doubt. *See Edward*, 635 S.W.3d at 655. We overrule Gibson's issues two through eleven.

## Conclusion

Having determined that Gibson's constitutional rights to a speedy trial, to confront witnesses, and to be free of unreasonable searches and seizures have not been violated, the trial court did not err in admitting the SANE report, and the evidence is legally sufficient to support the convictions, we affirm the trial court's judgment.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
(Chief Justice Gray concurs)
Affirmed
Opinion delivered and filed March 7, 2024
Do not publish
[CRPM]

